# EXHIBIT A

The Francis Firm PLLC
REDACTED - PPI

biBERK
A BERKSHIRE HATHAWAY COMPANY

Talk to a Licensed Expert
1-844-472-0967
Mon-Fri, 7AM-9PM EST

# The Francis Firm PLLC

Welcome to biBERK! Thank you for providing biBERK the opportunity to provide you with Professional Liability (E&O) insurance. Our mission is to protect your business so you have the peace of mind to do what you do best. The details of your plan are below along with some helpful resources.



| | |
|---|---|
| Coverages: | Professional Liability |
| Policy Number: | N9PL969763 |
| Policy Start Date: | 05/06/2023 |
| Policy End Date: | 05/06/2024 |
| 11 Monthly Payment(s): | $191.78 / month |
| Yearly: | $2,293 |

Payments begin 30 days, 90 days, or six months after purchase based on the payment terms selected and continue for consecutive periods until the policy is paid in full.

## Download a Certificate of Insurance (COI) or Report a Claim

### Get a Certificate (COI)

Getting a certificate of insurance is easy with biBERK. Request a certificate online at https://www.biberk.com/policyholders/certificate/create and we will send you an email with your certificate of insurance.

### Report a Claim

Make your insurance payment online quickly and efficiently, and then scratch that item off your task list. Simply go to the link, https://www.biberk.com/policyholders/claims and enter in your policy number, contact details, and information about the incident.

### Frequently Asked Questions

We want you to make well-informed decisions about your insurance needs. Learn from answers to the questions most frequently asked by business owners on our FAQs page at, https://www.biberk.com/policyholders/resources/faqs.

Questions? Your team is here to help.
1-844-472-0967
Mon-Fri, 7AM-9PM EST



BBB ACCREDITED BUSINESS A+ rating

Issue Dated: 05/05/2023 **MISCELLANEOUS PROFESSIONAL LIABILITY**

**Policy Number:** N9PL969763 **Renewal of:** N9PL416355

**Carrier: Berkshire Hathaway Direct Insurance Company – A Stock Company**

THIS IS A CLAIMS MADE POLICY. **CLAIM EXPENSE** IS INCLUDED IN THE LIMIT OF INSURANCE AND **RETENTION**. THE LIMIT OF LIABILITY AVAILABLE TO PAY **DAMAGES** SHALL BE REDUCED AND MAY BE TOTALLY EXHAUSTED BY AMOUNTS INCURRED AS **CLAIM EXPENSE**.

PLEASE READ THE ENTIRE POLICY CAREFULLY.

## DECLARATIONS

**[1]** **Named Insured and Mailing Address**
The Francis Firm PLLC
REDACTED - PPI

**Agency**
BIBERK
P.O. Box 113247
Stamford, CT 06911

**Additional Insured Names**
The Francis Firm

**[2]** **Policy Period**
From 05/06/2023 to 05/06/2024 12:01 AM standard time at the Mailing Address of the **Named Insured**.

**[3]** **Retroactive Date**
May 6 2021 12:01AM

**[4]** **Schedule of Insured Services**
Lawyer

| | | | |
|---|---|---|---|
| **[5]** | **Limits of Insurance** | **$** 1,000,000 | Each **Wrongful Act** |
| | | **$** 1,000,000 | Total Limit of Insurance |
| **[6]** | **Retention** | **$** 2,500 | Each **Wrongful Act** |
| **[7]** | **Net Variable Premium** | **$** 1,966.00 | |

**Expense Constant $**300.00 **Minimum Expense Constant $**0.00

**Net Premium $**2,293.00
**State Surcharge/Tax** **$** N/A

**[8] Forms Attached at Issuance**

**IL 99 00 08 13** – Authorization and Attestation
**MPL 00 00 04 20** – Miscellaneous Professional Liability Coverage Form
**MPL 00 120 11 15** – Anti-Stacking
**MPL 00 57 11 15** – War and Terrorism Exclusion
**MPL 00 58 12 18** – Extended Reporting Period Option
**MPL 98 NY 03 18** – New York Changes - Cancellation and Nonrenewal
**MPL 99 14 05 19** – New York Defense Outside Limits Endorsement
**MPL 99 27 08 20** – Lawyers Specific Areas of Practice Change
**MPL 99 NY 05 15** – New York Changes
**MPL DNY 09 20** – New York Miscellaneous Professional Liability Declarations
**MPL NY 98 03 18** – New York Automatic Extended Reporting Period
**MPL LAW 08 20** – Attorney Schedule.
**MPL DEC 04 20** – Miscellaneous Professional Liability Declarations
**PLWLC 10 22** – PL Policy Declarations Welcome Page

By acceptance of this policy, the Insured agrees that the statements in the Declarations and the Application and any attachments hereto are the Insured's agreements and representations and that this policy embodies all the agreements existing between the Insured and the Company or any of its representatives relating to this insurance.

**THIS ENDORSEMENT AUTHORIZES THE POLICY.**

# AUTHORIZATION AND ATTESTATION

This endorsement authorizes the insurance contract between you and the insurance company subsidiary listed on the DECLARATIONS PAGE of your insurance policy.

In Witness Whereof, this page executes and fully attests to this policy. If required by state law, the policy shall not be valid unless countersigned by our authorized representatives.

Authorizing signatures

Bruce J. Byrnes
Secretary

Peter Shelley
President

# MISCELLANEOUS PROFESSIONAL LIABILITY INSURANCE POLICY

**CLAIM EXPENSE** IS INCLUDED IN THE POLICY LIMIT AND THE **RETENTION**.

ALL WORDS OR PHRASES, OTHER THAN CAPTIONS, PRINTED IN BOLD FACE ARE DEFINED IN THE POLICY. VARIOUS PROVISIONS IN THIS POLICY RESTRICT COVERAGE. READ THE ENTIRE POLICY CAREFULLY TO DETERMINE RIGHTS, DUTIES AND WHAT IS AND IS NOT INSURED.

**CLAIMS MADE POLICY:** THIS INSURANCE COVERAGE IS ON A CLAIMS MADE BASIS. COVERAGE APPLIES ONLY TO THOSE **CLAIMS** THAT ARE FIRST MADE DURING THE **POLICY PERIOD** AND ANY EXTENDED REPORTING PERIOD, IF APPLICABLE, AS THOSE TERMS ARE DESCRIBED IN THIS POLICY. COVERAGE DOES NOT APPLY TO ANY **WRONGFUL ACT** COMMITTED BEFORE THE **RETROACTIVE DATE** STATED IN THIS POLICY.

## SECTION I – INSURING AGREEMENTS

### A. Coverage

1. The **Company** will pay on the **Insured's** behalf those sums, in excess of the **Retention** and within the applicable Limit of Insurance, that the **Insured** becomes legally obligated to pay as **Damages** or **Claim Expense** because of **Claims** first made during the **Policy Period** or Extended Reporting Period (if applicable) as a result of **Wrongful Acts** committed in the performance of **Insured Services**.

2. For the purposes of this policy of insurance, "**Wrongful Act**" shall mean the following conduct or alleged conduct by an **Insured**, or any person or organization for whom an **Insured** is legally liable:

   a. A negligent act, error or omission;

   b. Any form of defamation or other tort related to disparagement or harm to the character, reputation or feelings of any person or organization, including libel, slander, product disparagement, trade libel, infliction of emotional distress, malicious falsehood, outrage or outrageous conduct;

   c. Any form of invasion, infringement or interference with rights of privacy or publicity, including false light, public disclosure of private facts, intrusion, breach of confidence, and commercial appropriation of name or likeness;

   d. Wrongful entry or eviction, trespass, eavesdropping or other invasion of the right of private occupancy;

   e. False arrest, detention or imprisonment; or

   f. Malicious prosecution.

   All **Wrongful Acts** that take place between the **Retroactive Date** and the end of the **Policy Period** of the last policy the **Company** issued to the **Insured** and are related by common facts, circumstances, transactions, events and/or decisions will be treated as one **Wrongful Act**.

### B. Defense and Settlement of a Claim

The **Company** will have the right and duty to appoint an attorney and defend a covered **Claim**, even if the allegations are groundless, false or fraudulent. However:

1. The **Company** may, at the **Company's** discretion, investigate and settle a covered **Claim**.

2. No offer to settle any **Claim** will be made or accepted by the **Insured** without prior written agreement by the **Company**. Notwithstanding the foregoing, it is understood that the **Insured** may settle any **Claim** for which the total cost of **Damages** and **Claim Expense** associated therewith is less than the amount of the remaining **Retention**.

3. If the **Company** is willing to accept the judgment of the trial or appellate court or any negotiated settlement or settlement offer and the **Insured** is not willing to accept such judgment or settlement, the **Company's** liability for any **Claim Expense** and/or **Damages** incurred after the **Company** indicated its willingness to accept such judgment or settlement shall be limited to the amount for which the **Company** could have resolved the **Claim** plus an additional fifty percent (50%) of that amount. Nothing in this provision will cause the **Company's** liability to exceed the applicable Limits of Insurance set forth on the Declarations Page.

4. The **Company's** right and duty to defend and pay on the **Insured's** behalf ends when the **Company** has used up the applicable Limit of Insurance in payment of **Damages** or **Claim Expense**, or has met its payment obligations in connection with a **Claim** subject to **Section I.B.**3.

Nothing in this **SECTION I – INSURING AGREEMENT, Section B. Defense and Investigation** will relieve the **Insured** from any notice or cooperation requirements contained in the **GENERAL CONDITIONS** section or any other part of this policy.

**C. Spousal Coverage**

If a **Claim** made against an **Individual Insured** includes a **Claim** against that **Individual Insured's** lawful spouse solely by reason of:

1. Such spouse's status as the **Individual Insured's** spouse, or

2. Such spouse's ownership interest in property from which the claimant seeks recovery for the **Individual Insured's Wrongful Acts**,

all **Claim Expense** and **Damages** which such spouse becomes legally obligated to pay on account of such **Claim** shall be treated for purposes of this policy as **Claim Expense** and **Damages** which the **Individual Insured** is legally obligated to pay on account of the **Claim** made against the **Individual Insured**. Such **Claim Expense** and **Damages** shall be covered under this policy only if and to the extent that such **Claim Expense** and **Damages** would be covered under this policy if incurred by the **Individual Insured**. The coverage extension afforded by this subsection does not apply to any **Claim** alleging any **Wrongful Act** or omission by the **Individual Insured's** spouse. The term "spouse" as used in this section shall include any natural person qualifying as a domestic partner under the provisions of any applicable federal, state or local law in the United States of America.

## SECTION II – LIMITS OF INSURANCE, RETENTION AND REIMBURSEMENT

**A. Limits of Insurance**

1. Each **Wrongful Act**

   The Each **Wrongful Act** Limit of Insurance stated in Item 5.a. on the Declarations Page is the most the **Company** will pay for **Damages** and **Claim Expense** combined for the total of all **Claims** made during the **Policy Period** and any Extended Reporting Period arising from one **Wrongful Act**, no matter how many:

   a. **Insureds** this policy covers;

   b. **Claims** are made; or

   c. Persons or organizations make **Claims**.

2. Total Limit of Insurance

   The Total Limit of Insurance stated in Item 5.b. on the Declarations Page is the most the **Company** will pay for **Damages** and **Claim Expense** combined for the total of all **Claims** made during the **Policy Period** and any Extended Reporting Period, no matter how many:

   a. **Insureds** this policy covers;

   b. **Claims** are made;

   c. Persons or organizations make **Claims**; or

d. **Wrongful Acts** are committed.

3. Sub-Limits

a. **Disciplinary Proceedings Claim Expense**

The most the **Company** will pay for all **Claim Expense** incurred in connection with **Disciplinary Proceedings** commenced during the **Policy Period** and any applicable Extended Reporting Period shall be $10,000, no matter how many:

**(1)** **Insureds** this policy covers;

**(2)** **Disciplinary Proceedings** are commenced;

**(3)** Persons, organizations, or authorities institute **Disciplinary Proceedings**; or

**(4)** **Wrongful Acts** are committed.

b. **Insured's Claim Attendance Expense**

If the **Insured** is requested by the **Company** to attend hearings, depositions and trials in connection with the defense of a covered **Claim**, the most the **Company** shall pay for the **Insured's Claim Attendance Expense** incurred as a direct result of such attendance, after any applicable **Retention** is satisfied, will be the lesser of: the **Insured's** actual **Claim Attendance Expense**, or $500 per day. In any event, the **Company's** total payment for all such **Claim Attendance Expense** shall not exceed $10,000 for each **Policy Period**, no matter how many:

(1) **Insureds** this policy covers;

(2) **Claims** are made;

(3) Persons or organizations make **Claims**;

(4) Trials, depositions, hearings or related appearances the **Insured** attends; or

(5) **Wrongful Acts** are committed.

c. These sub-limits, and any other sub-limit which may be stated in any endorsement to this policy, shall be part of, and not in addition to, the Total Limit of Insurance stated in Item 5.b. of the Declarations. Payment for **Claim Expense** or **Damages** to which a sub-limit applies will reduce the Total Limit of Insurance available to pay **Claims** covered under this policy.

d. If more than one sub-limited coverage applies to a **Claim** covered under this policy, the **Company** shall not be obligated to pay more than the largest applicable sub-limit for all **Claim Expense** and **Damages** in connection with such **Claim**.

B. **Retention**

The **Company** shall be liable for only that part of **Damages** and **Claim Expense** covered under this policy which is excess of the **Wrongful Act Retention** as described below and in the amount set forth in Item 6. of the Declarations. Such **Retention** shall be borne by the **Insureds** uninsured and at their own risk.

With respect to **Claims** for **Wrongful Acts**, the **Retention** set forth in Item 6. of the Declarations shall apply to each **Wrongful Act** covered by this policy. All **Wrongful Acts** that involve the same or related subject, person, class of person or have common facts or circumstances or involve common transactions, events or decisions, regardless of the number of repetitions, alterations, actions, or forms of communication will be treated as one **Wrongful Act** for the purposes of applying the **Retention**. The **Retention** applies to **Damages** and **Claim Expense** combined. The **Retention** shall not apply to **Claim Expense** incurred in connection with **Disciplinary Proceedings**.

If more than one **Retention** applies to a **Claim** covered under this policy, the **Insured's Retention** obligation shall not exceed the largest applicable **Retention** in connection with such **Claim**.

The Limit of Insurance shall not be reduced by the application of the **Retention**. All other rights, duties and obligations under the policy shall remain the same regardless of whether or not the **Retention** has been satisfied, including, but not limited to, the **Company's** right and duty to investigate, defend and settle **Claims** and the **In-**

**sured's** notice and cooperation duties set forth in this policy.

C. **Reimbursement**

If, at the **Company's** option, the **Company** has paid any amounts for **Damages** or **Claim Expense** in excess of the applicable Limit of Insurance, including any amounts paid in excess of the **Company**'s obligation to pay **Damages** and **Claim Expense** pursuant to **SECTION I – INSURING AGREEMENT, Section B. Defense and Investigation, Paragraph 3**. of this policy, or if the **Company** has paid part or all of any **Retention**, the **Insured** shall reimburse the **Company** for such amounts upon demand.

The **Company** will have the right to seek recovery from any **Insured** of any **Claim Expense** or **Damages** paid by the **Company** as a result of any portion of a **Claim** that is not covered by this policy.

**SECTION III – EXCLUSIONS**

A. The **Company** is not obligated to pay **Damages** or **Claim Expense** or defend **Claims** for or arising directly or indirectly out of:

1. **Bodily Injury** or **Property Damage**.

2. An act or omission that is dishonest, fraudulent, criminal, malicious or was intentionally committed while knowing it was wrongful, as evidenced by any judgment, final adjudication, alternate dispute resolution proceeding or written admission by the **Insured**. This exclusion does not apply to any **Individual Insured** that did not commit, acquiesce or participate in the actions that gave rise to the **Claim**. Pursuant to **SECTION II – LIMITS OF INSURANCE, RETENTION AND REIMBURSEMENT, Section C.** of this policy, the **Company** shall have a right to reimbursement of any **Damages** or **Claim Expense** paid by the **Company** as a result of a **Claim** to which this exclusion applies.

3. Infringement, misappropriation or theft of:

   a. Copyright;

   b. Trademark, trade dress, trade name, service mark, service name, title or slogan;

   c. Patent; or

   d. Trade secrets.

4. Unfair competition, restraint of trade or any other violation of antitrust laws.

5. Harassment, misconduct or discrimination because of or relating to:

   a. Race, creed, color or age;

   b. Sex, sexual preference, national origin or religion; or

   c. Handicap, disability or marital status,

   but only if the harassment, misconduct or discrimination was knowingly committed, as evidenced by any judgment, final adjudication, alternate dispute resolution proceeding or written admission by the **Insured**. Pursuant to **SECTION II – LIMITS OF INSURANCE, RETENTION AND REIMBURSEMENT, Section C.** of this policy, the **Company** shall have a right to reimbursement of any **Damages** or **Claim Expense** paid by the **Company** as a result of a **Claim** to which this exclusion applies.

6. Gain, profit or advantage to which any **Insured** is not legally entitled, as evidenced by any judgment, final adjudication, alternate dispute resolution proceeding or written admission by the **Insured**. Pursuant to **SECTION II – LIMITS OF INSURANCE, RETENTION AND REIMBURSEMENT, Section C.** of this policy, the **Company** shall have a right to reimbursement of any **Damages** or **Claim Expense** paid by the **Company** as a result of a **Claim** to which this exclusion applies.

7. Violation of any provisions of the Employee Retirement Income Security Act of 1974 (the "Act") or:

   a. Any amendment to the Act; or

   b. Any regulations, rulings or orders issued pursuant to the Act.

8. Violation of the Securities Act of 1933 as amended, The Securities Exchange Act of 1934 as amended, the Investment Advisers Act of 1940, any state blue sky or securities law, any similar state or federal law, or any order, ruling or regulation issued pursuant to the above laws.

**9.** The actual or threatened discharge, dispersal or release of any **Pollutant**; or the creation of an injurious condition involving any **Pollutant**; or the existence of any **Pollutant** on any property; or the clean up, removal, testing, monitoring, containment, treatment, detoxification or neutralization of any **Pollutant**. This exclusion shall apply whether or not the pollution was sudden, accidental, gradual, intended, expected or preventable or whether or not any **Insured** caused or contributed to the pollution.

**10.** The performance of services which can only be performed by a:

**a.** Architect or licensed engineer;

**b.** Attorney;

**c.** Certified public accountant;

**d.** Medical practitioner or other health care provider, including, but not limited to, physicians or nurses, and including any **Claims** arising directly or indirectly out of medical malpractice, including the giving or receiving of professionally qualified medical opinions, or the administration of or failure to administer or summon medical care or first aid;

**e.** Actuary;

**f.** Licensed insurance agent or broker;

**g.** Certified financial planner; or

**h.** Securities or investment advisor or broker/dealer.

**11.** Malfunction or defect of any hardware, equipment or component. This exclusion does not apply when the malfunction or defect is solely the result of any **Insured's Wrongful Act** in performing **Insured Services**.

**12.** Electrical or mechanical failure, including power interruption, surge, spike, brownout or blackout, and outages to gas, water, telephone, cable, satellite, telecommunications or other infrastructure; except this exclusion does not apply when the failure is solely the result of the **Insured's Wrongful Act** in performing **Insured Services**.

**13.** Gathering, acquisition or obtaining of information about Internet users in any manner, including but not limited to, placement and/or use of spyware or adware.

**14.** Unsolicited faxes, unsolicited electronic mail, unsolicited telephone calls or other unsolicited electronic communications. This exclusion shall include alleged violations of state, local or federal law, including non-U.S. laws, any amendment to such laws, or violation of any order, ruling or regulation issued pursuant to such laws that regulate such communication.

**15.** Actions, decisions, orders or proceedings by the Federal Trade Commission, Federal Communications Commission or any other federal, state or local governmental regulatory agency, except for **Disciplinary Proceedings**.

**16.** Unauthorized access to, unauthorized use of, or unauthorized alteration of any computer or system, hardware, software, program, network, data, database, communication network or service, including the introduction of malicious code or virus, or repetitively accessing a website under the control of an **Insured** with the intent to deny others access to such website or with the intent to cause such website's functionality to fail, including what is commonly referred to as denial of service attacks.

**17.** **Advertising by the Insured**, including inaccurate, inadequate or incomplete description of the price of the **Insured's** goods, products or services, or the failure of the **Insured's** goods, products or services to conform with any represented quality or performance contained in **Advertising by the Insured**.

**18.** Performance or failure to perform otherwise covered **Insured Services** without a valid and active license, certification, accreditation, or designation if required by federal, state, or local statutory laws to perform such **Insured Services**

**19.** Obligations under any Workers' Compensation, Unemployment Compensation, Employers Liability or Disability Benefit Law, including any similar provisions of any federal, state or local statutory or common law.

20. Failure to protect any non-public, personally identifiable information in the **Insured**'s care, custody or control.

21. Violation of or noncompliance with any law or regulation governing or pertaining to gambling, gaming, lotteries or games of chance and any other act associated with any such violation or noncompliance

22. Theft, misappropriation, commingling or conversion of any funds, monies, assets, or property.

23. Investment advice including guarantees about the future performance or value of investments, rates of return, interest, or tax consequences

**B.** The **Company** is not obligated to pay **Damages** or **Claim Expense** or defend **Claims** made by:

1. Any enterprise that is a parent, affiliate or partner of any **Insured**;

2. Any enterprise directly or indirectly controlled, operated or managed by the **Insured** or an enterprise described in **SECTION III – EXCLUSIONS, Section B., Paragraph 1** above;

3. Any **Insured**;

4. Any present, former or prospective employees, officers, directors of any **Insured** when the **Claim** is in any way related to the present, former or prospective employment relations between the claimant and any **Insured**; or

5. Any regulatory authority, or any federal, state or local governmental agency; except this exclusion does not apply to a **Claim** brought by any of these entities if such entity is also a client, and the **Claim** arises from actual or alleged **Wrongful Acts** in the **Insured's** performance of **Insured Services** for or on behalf of such agency or entity.

**C.** The **Company** is not obligated to pay **Damages** or **Claim Expense** or defend **Claims** for the breach of express warranties, guarantees or contracts; provided, however, with respect to allegations of breach of contract this exclusion shall not apply to any liability that would have attached in the absence of such contract nor to coverage for **Claims** for actual or alleged negligent performance of **Insured Services**.

**D.** The **Company** is not obligated to pay **Damages** or **Claim Expense** or defend **Claims** based upon, arising out of, directly or indirectly resulting from, in consequence of or in any way involving:

1. Any fact, circumstance, transaction, event or **Wrongful Act** that:

   a. before the **First Inception Date** was the subject of any notice of claim or loss, or notice of potential claim or potential loss, given under any other policy of insurance; or

   b. which, as of the **First Inception Date** any **Insured** had knowledge and that was reasonably likely to give rise to a **Claim** that would fall within the scope of the insurance afforded by this policy; or

   c. any other **Wrongful Act** whenever occurring, which together with a **Wrongful Act** described in a. or b. above, constitute one **Wrongful Act** as defined in this policy;

2. Any demand, suit or other proceeding pending, or order, decree or judgment entered:

   a. against any **Insured** on or prior to the **First Inception Date** or any **Wrongful Act**, fact, circumstance or situation underlying or alleged therein; or

   b. any other **Wrongful Act** whenever occurring, which, together with a **Wrongful Act** described in a. above, constitute one **Wrongful Act** as defined in this policy.

## SECTION IV – WHERE AND WHEN THE COMPANY INSURES

**A. Where The Company Insures**

Coverage under this policy applies to **Wrongful Acts** committed anywhere and to **Claims** made in the jurisdiction of the United States of America (including its territories and possessions), Puerto Rico and Canada. If **Damages** or **Claim Expense** are paid in a currency other than United

States of America dollars, then the payment under this policy will be considered to have been made in United States dollars at the conversion rate published in *The Wall Street Journal* at the time of the payment.

**B. When The Company Insures**

**1. Claims** First Made

This insurance applies when a **Claim** is first made against any **Insured** during the **Policy Period**. To be covered, the **Claim** must also arise from a **Wrongful Act** committed during the **Policy Period**, except as otherwise provided below in **SECTION – IV, Section B. When The Company Insures, Paragraphs 2 and 3**. The **Company** will consider a **Claim** to be first made against an **Insured** when a written **Claim** is first received by any **Insured**.

This insurance also applies to **Claims** under the following conditions:

**2.** Prior **Wrongful Acts**

This policy will apply to a **Claim** first made against any **Insured** arising from a **Wrongful Act** committed between the **Retroactive Date** and the Inception Date of the policy, but only if all of the following conditions are met:

**a.** The **Claim** is first made against any **Insured** during the **Policy Period**. The **Company** will consider a **Claim** to be first made against the **Insured** when a **Claim** is received by any **Insured**;

**b.** No **Insured** knew, prior to the **First Inception Date**, of a circumstance that could reasonably be expected to lead to the **Claim**; and

**c.** There is no other valid and collectible insurance applicable to the **Claim**.

**3.** Reported **Wrongful Acts**

This policy will apply to a **Claim** first made against any **Insured** after the end of the **Policy Period**, but only if all of the following conditions are met:

**a.** The **Wrongful Act** giving rise to the **Claim** is committed between the **Retroactive Date** and the end of the **Policy Period**;

**b.** Prior to the **First Inception Date**, no **Insured** knew of the **Wrongful Act**, alleged **Wrongful Act** or circumstance that could reasonably be expected to lead to the **Claim**;

**c.** The **Company** receives written notice from the **Insured** during the **Policy Period** of the **Wrongful Act.** The notice must include all of the following information:

**(1)** The names of those persons or organizations involved in the **Wrongful Act**;

**(2)** The specific person or organization likely to make the **Claim**;

**(3)** A description of the time, place and nature of the **Wrongful Act**; and

**(4)** A description of the potential **Damages**; and

**d.** There is no other valid and collectible insurance applicable to the **Claim.**

The provisions of the policy in effect on the date the **Company** receives the notice of the **Wrongful Act** under this paragraph 3. will apply to any resulting **Claim.**

**4.** Extended Reporting Period

If the **Insured** did not report **Wrongful Acts** during the **Policy Period** as described in **SECTION – IV, Section B. When The Company Insures, Paragraph 3** above, and **Claims** arising from such **Wrongful Acts** are first made after the end of the **Policy Period**, such **Claims** are not covered under this policy unless the **First Named Insured** purchases an Extended Reporting Period from the **Company**.

**a.** If the **First Named Insured** purchases an Extended Reporting Period, the **Company** will cover a **Claim** first made against any **Insured** after the end of the **Policy Period** but during the Extended Reporting Period, only if all of the following conditions are met:

**(1)** The **Wrongful Act** giving rise to such **Claim** is committed between the **Retroactive Date** and the end of the **Policy Period**;

**(2)** No **Insured** knew prior to the **First Inception Date** of a circumstance that could reasonably be expected to lead to the **Claim**; and

**(3)** There is no other valid or collectible insurance applicable to the **Claim**.

The **Company** will consider a **Claim** to be made during the Extended Reporting Period only if the **Claim** is first received by any **Insured** after the Expiration Date of the **Policy Period** and prior to the Expiration Date stated in the Extended Reporting Period Endorsement.

**b.** The following provisions and conditions also apply to the Extended Reporting Period:

**(1)** If there is a **Termination of Coverage** and upon request by the **Named Insured**, the **Company** will sell one of the Extended Reporting Period options listed on the Extended Reporting Period Option Endorsement. Where a claims-made relationship between the **Insured** and the **Company** has continued for less than one year the **Company** is not required to sell an Extended Reporting Period for **Termination of Coverage** for nonpayment of premium or fraud.

**(2)** The **Company** must receive the **First Named Insured's** request for the Extended Reporting Period in writing within the later of:

**a)** sixty (60) days after the end of the **Policy Period**, or

**b)** thirty (30) days from the date of mailing or delivery of the advice informing the insured of an Extended Reporting Period option. This advice does not apply upon cancellation due to non-payment of premium or fraud on the part of the **Insured.**

On receipt and acceptance of the request, the **Company** will issue an endorsement showing the Extended Reporting Period in accordance with the option requested by the **First Named Insured**. At the same time, the **Company** will bill the additional premium, and the **Company** must receive payment within thirty (30) days after the billing date for the endorsement to be effective.

**(3)** The endorsement shall also include the provisions and conditions applicable to the Extended Reporting Period. Once in effect, the Extended Reporting Period may not be canceled.

**(4)** A **Claim** that is first made during the Extended Reporting Period will be deemed to have been made on the last day of the **Policy Period**. The provisions of the policy in effect on the last day of the **Policy Period** will apply.

**(5)** The Extended Reporting Period does not extend the **Policy Period** or change the scope of coverage provided.

**(6)** If a corporation, partnership or other entity has been placed in liquidation or bankruptcy or permanently ceases operations and the entity or its designated trustee does not purchase extended reporting period coverage then any person covered under the policy may request the extended reporting period coverage within 120 days of the termination of coverage

**5.** Multiple **Claims**

All **Claims** arising from the same **Wrongful Act** will be deemed to have been made on the earlier of the following times:

**a.** The date the first of those **Claims** is made against any **Insured**; or

**b.** The first date the **Company** receives the **Insured's** written notice of the **Wrongful Act**.

The provisions of the policy in effect on that date will apply.

## SECTION V – DEFINITIONS

**A.** "**Advertising by the Insured**" means advertising, publicity or promotion of any kind of the **Insured's** products and services.

**B.** "**Application**" means all of the following:

1. The **Insured's** Miscellaneous Professional Liability insurance policy application, and, if this policy is a renewal of a policy issued by the **Company**, the **Insured's** Miscellaneous Professional Liability insurance renewal application, including all applications and renewal applications submitted for such policies;

2. Other companies' insurance policy applications, if accepted by the **Company**; and

3. All attachments to the **Application** or renewal **Application** and any other information furnished to the **Company** for the purpose of applying for the insurance. All such attachments and information will be kept on file by the **Company**, deemed attached to the policy as if physically attached to it and shall become incorporated in and constitute a part of this policy.

**C.** "**Bodily Injury**" means physical injury to the body, or sickness or disease sustained by a person, including death resulting therefrom.

**Bodily Injury** also means mental injury or mental anguish, including emotional distress, shock or fright, if resulting from injury to the body, sickness, disease or death of any person. However, **Bodily Injury** does not include such mental injury or mental anguish if directly resulting from a covered **Wrongful Act** arising out of the performance or failure to perform **Insured Services**.

**D.** "**Claim**" means a written demand or written assertion of a legal right made against any **Insured** seeking **Damages** or non-monetary relief, including arbitration proceedings and **Disciplinary Proceedings**, including any appeal therefrom.

**E.** "**Claim Attendance Expense**" means the **Insured's** actual loss of earnings and reasonable expenses incurred directly in order for the **Insured** to attend hearings, depositions and trials at the request of the **Company** in connection with the defense of a covered **Claim.**

**F.** "**Claim Expense**" means expenses incurred by the **Company** or by the **Insured** with the **Company's** consent in the investigation, adjustment, negotiation, arbitration, mediation and defense of covered **Claims**, whether paid by the **Company** or **Insured** with the **Company's** consent. **Claim Expense** includes:

1. Attorneys fees;

2. Costs taxed against an **Insured** in any suit defended by the **Company**;

3. The cost of appeal bonds or bonds to release attachments, but only for bond amounts within the applicable Limit of Insurance. The **Company** does not have to furnish these bonds; and

4. Reasonable expenses incurred by an **Insured** at the **Company's** request, excluding:

   a. Loss of earnings (except to the extent covered as **Claim Attendance Expense**); and

   b. Salaries or other compensation paid to any **Insured**.

**G.** "**Company**" means the insurance company stated at the top of the Declarations Page.

**H.** "**Damages**" means monetary judgment, award or settlement, including those that are actual, statutory, punitive, multiplied or exemplary, if permitted by law in an applicable jurisdiction; and legal expense or other costs included as part of a judgment, award or settlement. **Damages** also includes interest on any part of any judgment that accrues after entry of the judgment and before the **Company** has paid, offered to pay or deposited in court the part of the judgment that is within the applicable Limit of Insurance.

**Damages** does not include fines, penalties, taxes or return of fees, deposits, commissions or charges for goods or services.

**Damages** also does not include costs of correcting, performing or re-performing **Insured Services** by:

1. Any **Insured**; or

2. Another party, when an **Insured** had the opportunity to correct, perform or re-perform the service that generated the cost.

In determining the insurability of punitive or exemplary damages, or the multiplied portion of any multiplied damage award, the law of the jurisdiction most favorable to the insurability of those damages will control for purposes of resolving any dispute between the **Company** and the **Insureds**, provided that such jurisdiction is:

1. Where the punitive, exemplary or multiplied damages were awarded or imposed;

2. Where the **Wrongful Act** giving rise to the **Claim** took place;

3. Where either the **Company** or any **Insured** is incorporated, has its principal place of business or resides; or

4. Where this policy was issued or became effective.

I. “**Disciplinary Proceeding**” means any action, investigation or request for information by a regulatory or disciplinary official, board or agency authorized by law or administrative order to oversee, investigate or institute actions regarding the **Insured’s** professional misconduct in the performance of **Insured Services**.

J. “**First Inception Date**” is the Inception Date of the earliest errors and omissions insurance policy the **Company** issued to the **First Named Insured** that provides similar coverage by the **Company**, provided that there has been uninterrupted coverage by the **Company** for the **First Named Insured** from that earliest policy to this policy.

K. The “**First Named Insured**” is the **Named Insured** first listed on the Declarations Page.

L. “**Individual Insured**” means, individually and collectively:

1. Any **Named Insured** that is an individual person;

2. Any **Named Insured’s** stockholders for their liability as stockholders;

3. Any **Named Insured’s** and **Subsidiary’s** partners, officers, directors and employees, but only with respect to their activities within the scope of their duties in such capacity in the performance of **Insured Services** by the **Named Insured** or any **Subsidiary**; and

4. Any **Named Insured’s** and **Subsidiary’s** former partners, officers, directors and employees, but only with respect to their activities within the scope of their duties in the capacity of the **Named Insured’s** partners, officers, directors or employees in the performance of **Insured Services** by the **Named Insured**.

In the event of death, incompetency, insolvency or bankruptcy of any **Insured**, the **Insured’s** legal representative shall be considered an “**Individual Insured**”, but only with respect to its activities within the scope of its duties in such capacity in the performance of **Insured Services** by a **Named Insured**.

M. "**Insured**" means, individually and collectively:

1. A **Named Insured**; and

2. The **Individual Insureds**.

N. "**Insured Services**" means those services performed for others as stated in Item 4. on the Declarations Page, or as otherwise stated by endorsement to this policy.

O. "**Named Insured**" means the person or entity listed in Item 1. of the Declarations Page and its **Subsidiaries**.

P. "**Policy Period**" means the period of time stated in Item 2. on the Declarations Page, or any shorter period resulting from policy cancellation.

Q. "**Pollutant**" means any solid, liquid, gaseous or thermal irritant or contaminant, including but not limited to:

1. Smoke, vapor, soot, fumes, acids, alkalis, chemicals, lead, silica, mold or asbestos;

2. Hazardous, toxic or radioactive matter or nuclear radiation;

3. Waste, which includes material to be recycled, reconditioned or reclaimed; or

4. Any other pollutant as defined by applicable federal, state or local statutes, regulations, rulings or ordinances.

R. "**Property Damage**" means:

1. Physical injury to tangible property, including all resulting loss of use of that property; or

2. Loss of use of tangible property that is not physically injured.

S. "**Retention**" means the amount stated in Item 6. on the Declarations Page and described in **Section II.B.** of this policy.

T. "**Retroactive Date**" means the date, if any, stated in Item 3. on the Declarations Page.

U. "**Subsidiary(ies)**" means any entity in which, and so long as, a **Named Insured**, either directly or indirectly:

1. Owns more than fifty (50) percent of the issued and outstanding voting equity securities; or

2. Controls voting rights representing the present right to vote for election or to appoint more than fifty (50) percent of the directors or trustees;

on or before the effective date of this policy, or after the effective date of this policy; provided that, with any respect to any entity that becomes a **Subsidiary** after the effective date of the policy, and the entity's gross revenues exceed ten percent (10%) of the **Insured's** annual gross revenues at the Inception Date of the policy, the entity shall only be deemed a **Subsidiary** under this policy for a period of ninety (90) days from the date it became a **Subsidiary**.

If the **Insured** gives written notice within ninety (90) days of the creation or acquisition of the **Subsidiary**, including the necessary underwriting information the **Company** may require and pay any reasonable additional premium as the **Company** may require, then the **Company** will issue an endorsement including such entity in the definition of **Subsidiary** for the duration of the **Policy Period**.

In all events there is no coverage for **Wrongful Acts**, **Damages** or **Claim Expense** relating to any activities of a **Subsidiary**, or **Insured** thereof, occurring prior to the time such entity became a **Subsidiary**.

V. "**Wrongful Act**" means conduct or alleged conduct by an **Insured**, or any person or organization for whom an **Insured** is legally liable, as described in Insuring Agreement **Section I.A.** of this policy or as amended by applicable endorsement(s) attached hereto.

All **Wrongful Acts** that:

1. Take place between the **Retroactive Date** and the end of the **Policy Period** of the last policy the **Company** issued to the **Insured** and

2. Are related by common facts, circumstances, transactions, events and/or decisions will be treated as one **Wrongful Act**.

## SECTION VI – GENERAL CONDITIONS

A. **Time of Inception; Policy Period**

This policy will begin at 12:01 A.M. on the Inception Date shown in the Declarations. This policy will continue to apply until 12:01 A.M. on the Expiration Date also shown in the Declarations unless terminated at an earlier date.

B. **Premium**

The **First Named Insured** will pay to the **Company** the amount of premium stated in Item 7. of the Declarations. The premium may be adjusted at any time during the **Policy Period** or any extensions of the **Policy Period** based upon changes in the provisions of this policy as may be agreed upon by the **First Named Insured** and the **Company**.

C. **Insured's Duties in the Event of a Claim**

1. If there is a **Claim**, the **Insured** must do the following after the **Named Insured** has knowledge of the **Claim**:

   a. Notify the **Company** in writing as soon as practicable. This notice must contain details that identify the **Insured**, the claimant and also reasonably obtainable information concerning the time, place and other details of the **Wrongful Act** and **Claim**.

b. Immediately send the **Company** copies of all demands, notices, summonses or legal papers received in connection with the **Claim**;

c. Authorize the **Company** to obtain records and other information;

d. Cooperate with and assist the **Company** in the investigation, settlement or defense of the **Claim**; and

e. Assist the **Company**, upon the **Company's** request, in enforcing any rights of contribution or indemnity against another who may be liable to any **Insured**.

2. No **Insured** will, except at the **Insured's** own cost, voluntarily make a payment, admit liability, assume any obligation or incur any expense without the **Company's** prior written consent.

3. When this policy requires that an **Insured** provide notice of a **Claim**, we will consider the **Insured** to have knowledge of that **Claim** when any of the offices of the **Named Insured's** chairperson of the board of directors, president, chief executive officer, chief operating officer, chief financial officer, risk manager or in-house counsel has that knowledge.

**D. Bankruptcy**

The bankruptcy or insolvency of the **Insured** or **Insured's** estate will not relieve the **Company** of the **Company's** obligation under this insurance. However, this insurance will not apply to liability directly or indirectly due to such bankruptcy, insolvency, receivership or subsequent liquidation.

**E. Other Insurance**

If other valid and collectible insurance applies to a **Claim** covered under this policy, this insurance is excess over such other insurance, except when the other insurance is specifically arranged by or on behalf of the **Named Insured** to apply in excess of this insurance, and no other insurance applies to the **Claim**.

**F. Subrogation and Recovery**

In the event of any payment under this policy, the **Company** will be subrogated to all the **Insured's** rights of recovery therefore against any person or organization, and the **Insured** will execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The **Insured** will do nothing to prejudice such rights. The **Company** will have no rights of subrogation against any **Insured** hereunder. Any recoveries shall be applied as follows:

1. First, to the **Company** up to the amount the **Company** has paid for **Damages** and **Claim Expense**.

2. Then, to the **First Named Insured** as recovery of Retention amounts paid as **Damages** and **Claim Expense**.

**G. Changes in Insured's Operations**

This policy applies only to **Insured Services** as described in the **Application**. This policy will not apply to any other activities or entities unless, with the **Company's** consent, such activities or entities are added to this policy by endorsement. The **Named Insured** will promptly pay any additional premium that may become due as a result of such addition.

**H. Assignment**

Assignment of any interest under this policy will not bind the **Company** unless and until its written consent is endorsed hereon.

**I. Cancellation and Nonrenewal**

**1. Cancellation**

a. The **First Named Insured** may cancel this policy by mailing or delivering written notice of cancellation to the **Company** or the **Company's** authorized representative, at the address shown on the Declarations Page of this policy. Such notice of cancellation will state the effective date of cancellation or, if no effective date is stated, the effective date of cancellation shall be thirty (30) days after receipt of notice. The **Policy Period** will end on that date.

b. The **Company** may cancel this policy by mailing or delivering to the **First Named Insured** written notice of cancellation at least:

**(1)** Ten (10) days before the effective date of cancellation if the **Company** cancels for nonpayment of premium; or

**(2)** Thirty (30) days before the effective date of cancellation if the **Company** cancels for any other reason.

**c.** If this policy is canceled, the **Company** will send the **First Named Insured** any premium refund due. If the **Company** cancels, the refund will be the pro rata unearned amount of the annual premium. If the **First Named Insured** cancels, the refund, if any, will be the pro rata unearned amount of the annual premium calculated at the customary short rate. Return of premium to the **First Named Insured** is not a condition precedent to cancellation.

**d.** The **Company** will mail or deliver the notice to the address stated in Item 1. on the Declarations Page.

**e.** If notice of cancellation is mailed, proof of mailing will be sufficient proof of notice. Delivery of the notice will be the same as mailing.

**2. Nonrenewal**

The **Company** may elect not to renew this policy by mailing or delivering written notice of nonrenewal to the **First Named Insured** at the address shown on the Declarations Page of this policy. The **Company** will mail or deliver the notice at least sixty (60) days before the expiration of the policy.

If notice of nonrenewal is mailed, proof of mailing will be sufficient proof of notice. Delivery of the notice will be the same as mailing.

**J. Action Against the Company**

**1.** No action will lie against the **Company** unless, as a condition precedent thereto, there has been full compliance with all of the terms of this policy by all **Insureds**, nor until the amount of the **Insured's** obligation to pay has been fully determined either by judgment or award against the **Insured** after actual trial or arbitration or by written agreement among the **Insured**, the claimant and the **Company**. Any person or organization, or the legal representative thereof, who has secured such judgment or written agreement, will thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy.

**2.** No person or organization will have any right under this policy to join the **Company** as a party to any action against the **Insured** to determine the **Insured's** liability, nor will the **Company** be impleaded by the **Insured** or the **Insured's** legal representative.

**K. Representations**

By accepting this policy, the **Named Insured** agrees:

**1.** The statements made and information contained in the **Application** for this insurance furnished to the **Company** are true, accurate and complete;

**2.** Those statements furnished to the **Company** are representations the **Named Insured** made to the **Company** on behalf of all **Insureds**;

**3.** Those representations are a material inducement to the **Company** to issue this policy;

**4.** The **Company** has issued this policy in reliance upon those representations;

**5.** This policy embodies all agreements existing between the **Insured** and the **Company** or any of its agents relating to this insurance;

**6.** The **Insured** has and will provide true, accurate and complete information with regard to audits, claims, and assessments as required by the **Company**;

**7.** The **Application**, including any attachments, and all other information and materials submitted by or on behalf of the **Insureds** to the **Company** in connection with the **Company** underwriting this policy, will be kept on file by the **Company**, deemed attached to this policy as if physically attached to it and shall become incorporated in and constitute a part of this policy;

**8.** If such representations or such information are not true, accurate and complete, this policy shall be null and void in its entirety and the **Company** shall have no liability hereunder.

**L. Severability**

With regard to the information provided on any insurance **Application** or with regard to knowledge of any **Wrongful Acts** or **Claims** as referenced in this policy, only facts pertaining to and knowledge possessed by any of the offices of the **Named Insured's** chairperson of the board of directors, president, chief executive officer, chief operating officer, chief financial officer, risk manager, in-house counsel or any person whose signature appears on any **Application**, shall be imputed to the **Insured**.

**M. Changes to the Policy**

Notice or knowledge possessed by any person will not effect a waiver or a change in any part of this policy or estop the **Company** from asserting any rights under the terms of this policy; nor will the terms of this policy be waived or changed except by written endorsement issued to form a part of this policy.

**N. Authorization**

The **First Named Insured** is responsible for assurance of payment of all premiums and **Retentions**. The **First Named Insured** will have exclusive authority to act on behalf of all other **Insureds** with respect to providing and receiving notices of cancellation or nonrenewal, receiving any return premium, and purchasing an Extended Reporting Period. In the event of a disagreement between any **Insureds**, the **First Named Insured** will have exclusive authority to act on behalf of all other **Insureds** with respect to negotiation of settlements and the decision to appeal or not to appeal any judgment.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ANTI-STACKING ENDORSEMENT

This endorsement modifies insurance provided under the following:

Miscellaneous Professional Liability Insurance Policy

**SECTION II – LIMITS OF INSURANCE, RETENTION AND REIMBURSEMENT, Section A Limits of Insurance** of the policy is amended to add the following:

If any **Wrongful Act** that is covered by the policy is also covered to any extent by another policy also issued by the **Company** or any of its parents, subsidiaries or its affiliates to the **Named Insured**, the total liability of the **Company** or its parents, subsidiaries or its affiliates under either or both policies for the **Wrongful Act** shall not exceed the largest Total Limit of Insurance available under either policy.

**All other terms and conditions of this policy remain unchanged.**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# WAR AND TERRORISM EXCLUSION

This endorsement modifies insurance provided under the following:

Miscellaneous Professional Liability Insurance Policy

**SECTION III – EXCLUSIONS** of the policy is amended to add the following:

Notwithstanding any provision to the contrary within this policy or any endorsement thereto, it is agreed that the **Company** is not obligated to pay **Damages**, **Claim Expense**, or any other cost or expense directly or indirectly caused by, resulting from or in connection with any of the following regardless of any other cause or event contributing concurrently or in any other sequence to the loss:

**1.** War, invasion, acts of foreign enemies, hostilities or warlike operations (whether war be declared or not), civil war, rebellion, revolution, insurrection, civil commotion assuming the proportions of or amounting to an uprising, military or usurped power; or

**2.** Any Act of Terrorism.

For the purpose of this endorsement, an **Act of Terrorism** means an act, including but not limited to the use of force or violence and/or the threat thereof, of any person or group(s) of persons, whether acting alone or on behalf of or in connection with any organization(s) or government(s), committed for political, religious, ideological or similar purposes including the intention to influence any government and/or to put the public, or any section of the public, in fear.

The **Company** is also not obligated to pay loss, **Damages**, **Claim Expense**, or any other cost or expense directly or indirectly caused by, resulting from or in connection with any action taken in controlling, preventing, suppressing or in any way relating to 1. and/or 2. above.

If the **Company** alleges that by reason of this exclusion, any **Damages**, **Claim Expense**, or any other cost or expense is not covered by this policy, the burden of proving the contrary shall be upon the **Insured**.

In the event any portion of this endorsement is found to be invalid or unenforceable, the remainder shall remain in full force and effect.

**All other terms and conditions of this policy remain unchanged.**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXTENDED REPORTING PERIOD OPTION ENDORSEMENT

This endorsement modifies insurance provided under the following:

Miscellaneous Professional Liability Insurance Policy

The Extended Reporting Period options and the respective percentage of the Net Variable Premium, as stated in Item 7. of the Declarations Page that the **First Named Insured** must pay to purchase the Extended Reporting Period are:

| | |
|---|---|
| One Year | = 100% |
| Two Years | = 150% |
| Three Years | = 200% |
| Four Years | = 225% |
| Unlimited | = 250% |

**All other terms and conditions of this policy remain unchanged.**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NEW YORK CHANGES - CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

Miscellaneous Professional Liability Insurance Policy

(a) Definitions. As used in this endorsement

(1) "Covered policy" means, for purposes of this endorsement ,a policy of commercial risk insurance, professional liability insurance or public entity insurance, and shall include any contract, certificate or other evidence of such insurance.

(2) "Required policy period" means a period of 1 year from the date as of which a covered policy is renewed or 1st issued.

(3) "Nonpayment of premium" means the failure of the named insured to discharge any obligation in connection with the payment of premiums on a policy of insurance or any installment of such premium, whether the premium is payable directly to the Company or its agent, or indirectly under any premium finance plan or extension of credit. Payment to the Company, or to an agent or broker authorized to receive such payment, shall be timely for the purpose of (this endorsement) if made within 15 days after the mailing to the insured of a notice of cancellation for nonpayment of premium.

(4) "Renewal" or "to renew" means the issuance or offer to issue by the Company of a policy superseding a policy previously issued and delivered by the same Company, or another Company under common control, or the issuance or delivery of a certificate or notice extending the term of a policy beyond its policy period or term; provided, however, that any policy with a policy period or term of less than 1 year shall, for the purpose of this endorsement ,be considered as if written for a policy period or term of 1 year, and any policy with no fixed expiration date shall, for the purpose of this endorsement ,be considered as if written for successive policy periods or terms of 1 year.

(5) "Administrative suspension" means a temporary suspension of a driver's license pending a hearing, prosecution or investigation, or an indefinite suspension of a driver's license because of the failure of the person suspended to perform an act, which suspension will be terminated by the performance of the act by the person suspended.

(6) "Excess liability policy" means a policy of commercial risk, public entity or professional liability insurance, including a commercial umbrella policy, when written over 1 or more underlying liability policies that provide with respect to the same risk coverage of at least $500,000 in the aggregate.

(8) "Jumbo risk" means a business entity that generates gross revenues exceeding $100,000,000 annually and that develops an annual liability premium for the policy of at least $500,000, but shall not include any public entity or not-for-profit corporation.

(9) "Renewal date" means the date specified in a conditional renewal notice, renewal certificate or in the renewal policy itself, for coverage under a renewal policy to take effect.

(10) "Blanket" or "mass" nonrenewal means a situation where the Company within a 6 month period is non-renewing policies representing more than 1% of a market.

(11) "Market" means a line, subline or classification (other than a classification delineated by geographic location) of property/casualty insurance risks

(b) During the 1st 60 days a covered policy is initially in effect, except for the bases for cancellation set forth in paragraph (c)(1) , (c)(2) or (c)(3) ,no cancellation shall become effective until 20 days after written notice is mailed or delivered to the 1st- named insured at the mailing address shown in the policy to such insured's authorized agent or broker.

(c) After a covered policy has been in effect for 60 days unless cancelled pursuant to subsection (b) or on or after the effective date if such policy is a renewal, no notice of cancellation shall become effective until 15 days after written notice is mailed or delivered to the 1st- named insured to such insured's authorized agent or broker, such cancellation is based on 1 or more of the following:

(1) With respect to covered policies:

(A) nonpayment of premium provided, however, that a notice of cancellation on this ground shall inform the insured of the amount due;

(B) conviction of a crime arising out of acts increasing the hazard insured against;

(C) discovery of fraud or material misrepresentation in the obtaining of the policy or in the presentation of a claim thereunder;

(D) after issuance of the policy or after the last renewal date, discovery of an act or omission, or a violation of any policy condition, that substantially and materially increases the hazard insured against, and which occurred subsequent to inception of the current policy period;

(E) material physical change in the property insured, occurring after issuance or last annual renewal anniversary date of the policy, which results in the property becoming uninsurable in accordance with the Company's objective, uniformly applied underwriting standards in effect at the time the policy was issued or last renewed; or material change in the nature or extent of the risk, occurring after issuance or last annual renewal anniversary date of the policy, which causes the risk of loss to be substantially and materially increased beyond that contemplated at the time the policy was issued or last renewed;

(F) a determination by the superintendent that continuation of the present premium volume of the Company would jeopardize that Company's solvency or be hazardous to the interests of policyholders of the Company, its creditors or the public;

(G) a determination by the superintendent that the continuation of the policy would violate, or would place the Company in violation of, any provision of this chapter; or

(H) where the Company has reason to believe, in good faith and with sufficient cause, that there is a probable risk or danger that the insured will destroy, or permit to be destroyed, the insured property for the purpose of collecting the insurance proceeds, provided, however, that:

(i) a notice of cancellation on this ground shall inform the insured in plain language that the insured must act within 10 days if review by the department of the ground for cancellation is desired pursuant to item this subparagraph Hiii

(ii) notice of cancellation on this ground shall be provided simultaneously by the Company to the department; and

(iii) upon written request of the insured made to the department within 10 days from the insured's receipt of notice of cancellation on this ground, the department shall undertake a review of the ground for cancellation to determine whether or not the Company has satisfied the criteria for cancellation specified in (this endorsement) ; if after such review the department finds no sufficient cause for cancellation on this ground, the notice of cancellation on this ground shall be deemed null and void.

(2) Not applicable to this policy

(3) Iin addition to the bases for cancellation set forth in paragraph (c )(1) ,revocation or suspension of the insured's license to practice his profession or, if the insured is a hospital, it no longer possesses a valid operating certificate under New York Statutory code 2800 a the public health law.

(4) Not applicable to this policy

(5) Written notice of cancellation in accordance with © shall be mailed or delivered to the 1st- named insured, at the address shown on the policy, to the insured's authorized agent or broker.

(d)

(1) After a covered policy has been in effect for 60 days, or on and after the effective date if such policy is a renewal, no premium increase for the term of the policy shall be made to become effective unless due to and commensurate with insured value added, subsequent to issuance or the last renewal date, pursuant to the policy or at the insured's request or, in lieu of cancellation, where such increase is based upon 1 or more of the grounds for cancellation set forth in subparagraph(c)(1)(D) or (c)(1)(E) .

(e)

(1) A covered policy shall remain in full force and effect pursuant to the same terms, conditions and rates unless written notice is mailed or delivered by the Company to the 1st- named insured, at the address shown on the policy, to such insured's authorized agent or broker, indicating the Company's intention:

(A) not to renew such policy; or

(B) to condition its renewal upon change of limits, change in type of coverage, reduction of coverage, increased deductible or addition of exclusion, or upon increased premiums in excess of 10% (exclusive of any premium increase generated as a result of increased exposure units, pursuant to subsection (d) or as a result of experience rating, loss rating, retrospective rating or audit), except that with respect to an excess liability policy, the Company may also, consistent with regulations promulgated by the superintendent, condition its renewal upon requirements relating to the underlying coverage, in which event the conditional renewal notice shall be treated as an effective notice of nonrenewal if such requirements are not satisfied as of the later of the expiration date of the policy or 60 days after mailing or delivery of such notice; or

(C) that the policy will not be renewed or will not be renewed upon the same terms, conditions or rates; such alternative renewal notice must be mailed or delivered on a timely basis and advise the insured that a 2nd notice shall be mailed or delivered at a later date indicating the Company's intention as specified in subparagraph (e )(1)(A) or (e )(1)(B) and that coverage shall continue on the same terms, conditions and rates as the expiring policy, until the later of the expiration date or 60 days after the 2nd notice is mailed or delivered; such alternative renewal notice also shall advise the insured of the availability of loss information pursuant to subsection (g) and ,upon written

request, the Company shall furnish such loss information within 10 days consistent with the provisions of such subsection .

(2) A nonrenewal notice as specified in (e )(1)(A),a conditional renewal notice as specified in (e )(1)(B)), and the 2nd notice described in subparagraph (e )(1)(C) shall contain the specific reason or reasons for nonrenewal or conditional renewal, set forth the amount of any premium increase (or, where such amount cannot reasonably be determined as of the time the notice is provided, a reasonable estimate of the premium increase based upon the information available to the Company at that time), and describe in plain and concise terms the nature of any other proposed changes specified in paragraph (e )(1) . The superintendent shall by regulation specify the permissible range of such estimate (which shall not exceed 5% of the actual amount) and the permissible methods by which the Company may satisfy the notice requirements of this endorsement .

(3) The notice required by paragraph (e )(1) shall be mailed or delivered at least 60, but not more than 120, days in advance of the expiration date of the policy, except that for a policy issued to a jumbo risk, the notice shall be mailed or delivered at least 30, but not more than 120, days in advance of the expiration date of the policy.

(4) Paragraphs (e )(1) , (e )(2) and (e )(3) shall not apply when the named insured, an agent or broker authorized by the named insured, or another Company of the named insured has mailed or delivered written notice that the policy has been replaced or is no longer desired.

(5)

(A) If the Company employs an alternative renewal notice as authorized by subparagraph (e )(1)(C) ,the Company shall provide coverage on the same terms, conditions, and rates as the expiring policy, until the later of the expiration date or 60 days after the mailing or delivery of the 2nd notice described in such subparagraph ,except to the extent that, prior thereto, the insured has replaced the coverage or elects to cancel, in which event such cancellation shall be on a pro rata premium basis.

(B) In the event that a late conditional renewal notice or a late nonrenewal notice is provided by the Company prior to the expiration date of the policy, coverage shall remain in effect, at the same terms and conditions of the expiring policy and at the lower of the current rates or the prior period's rates, until 60 days after such notice is mailed or delivered, except to the extent that, prior thereto, the insured has replaced the coverage or elects to cancel, in which event such cancellation shall be on a pro rata premium basis; provided, however, that if the insured elects to renew on the basis of the conditional renewal notice, then such terms, conditions and rates shall govern the policy upon expiration of such 60 day period unless such notice was provided at least 30 days prior to the expiration date of the policy, in which event the terms, conditions and rates set forth in the conditional renewal notice shall apply as of the renewal date.

(C)

(i) In the event that a late conditional renewal notice or a late nonrenewal notice is provided by the Company on or after the expiration date of the policy, coverage shall remain in effect on the same terms and conditions of the expiring policy for another required policy period, and at the lower of the current rates or the prior period's rates unless the insured during the additional required policy period has replaced the coverage or elects to cancel, in which event such cancellation shall be on a pro rata premium basis.

(ii) Every notice mailed or delivered pursuant to this endorsement shall advise the insured of the insured's rights to coverage and the duration thereof.

(6) Paragraph (e )(1)(5) shall not create a new annual aggregate liability limit (if any) for the covered policy, except that the annual aggregate limit of the expiring policy shall be increased in proportion to the policy

extension pursuant to such (e )(1)(5)) ; provided, however, that if the insured elects to accept the terms, conditions and rates of the conditional renewal notice pursuant to subparagraph ( e)(5)(B) ,a new annual aggregate limitation (if any) shall become effective as of the inception date of the renewal, subject to regulations promulgated by the superintendent.

(7) Not Appplicable to the **Insured** of this policy

(8) Not Appplicable to the **Insured** of this policy

(9) Not Appplicable to the **Insured** of this policy

(f) If the Company provides the notice described in paragraphs f(e)(1) , (e)(2) and (e)(3) and thereafter the Company extends the policy for 90 days or less, an additional notice of nonrenewal is not required with respect to the extension.

(g)

(1) Every notice mailed or delivered by the Company pursuant to this endorsement shall advise the 1st-named insured such insured's authorized agent or broker the availability loss information consistent with paragraph (g)(2) .

(2) Upon written request by the 1st- named insured or such insured's authorized agent or broker, the Company shall mail or deliver the following loss information covering a period years specified by the superin10dent by regulation or the period time coverage has been provided by the Company, whichever is less, within 10 days of such request:

(A) Information on closed claims, including date and description of occurrence, and any payments;

(B) Information on open claims, including date and description of occurrence, and amounts of any payments; and

(C) Information on notice of any occurrences, including date and description of occurrence.

(3) The Company may charge a reasonable fee as determined by the superintendent only for such information provided upon request, but not for such information (even in the absence of a request therefor) required to be provided.

(4) For purposes of (g) ,the term 1st- named insured shall include an individual certificate holder under a property/casualty group policy with respect to such certificate holder's loss information.

(h) Every notice of cancellation issued pursuant to this endorsement shall specify the grounds for cancellation and shall contain where applicable a reference to the pertinent paragraph or subparagraph . Every notice of nonrenewal issued pursuant to this endorsement shall set forth or be accompanied by the reason for nonrenewal, and any such stated reason shall be valid and effective unless such reason violates this chapter or any other state or federal law.

(i) No cancellation, conditional renewal or nonrenewal notice that fails to include a provision required by this endorsement shall be an effective notice for purposes of this endorsement .

(j) The provisions of subsection (e) ,regarding conditional renewal shall apply to the master contract under a property/casualty group policy, but shall not apply to individual certificate holders under such group policy.

(k)

(1) Subject to the rights of the Company to cancel a policy pursuant to subsection (b) or (c) ,in the event that the Company terminates the contract or account of a licensed agent or broker, the Company shall offer in

regard to any policy written through such terminated agent or broker to continue each such policy with that agent or broker for any remaining part of the required policy period.

(2) The terminated agent or broker shall be entitled to receive commissions on all business continued pursuant to paragraph (k)1) at the commission rate applicable to such agent or broker at the time of termination.

(3) (k)shall not apply to an agent or broker: (A) who exclusively represents 1 insurance company or a group of insurance companies under common management; (B) whose license has been revoked by the superintendent; or (C) whose contract or account has been terminated due to the agent's or broker's insolvency or gross misconduct.

(l) Not Applicable to the **Insured** of this policy

(m) Not Applicable to the **Insured** of this policy

(n) Not Applicable to the **Insured** of this policy

(o) The provisions of subsections (e) and (h) shall not apply to a policy the term of which expires during the period commencing with the original effective date of this endorsement and ending on the 60th day after such effective date, provided, however, that in the interim the provisions of former New York statutes as in effect on the day preceding the original effective date of this endorsement shall apply, as if such sections were not repealed by a chapter of the laws of 1986, but in the event any such policy is at any time reexecuted, renewed, altered, modified or amended, such provisions shall apply to such policy.

All other terms and conditions of this policy remain unchanged**.**

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# DEFENSE OUTSIDE LIMITS ENDORSEMENT

This endorsement modifies insurance provided under the following:

Miscellaneous Professional Liability Insurance Policy

The notice on the first page of the "Miscellaneous Professional Liability Insurance Policy" of "**CLAIM EXPENSE** IS INCLUDED IN THE POLICY LIMIT AND THE **RETENTION**." is deleted in its entirety.

**SECTION I – INSURING AGREEMENTS, Section A. Coverage** s **1** is deleted in its entirety and replaced with the following:

1. The **Company** will pay on the **Insured's** behalf those sums that the **Insured** becomes legally obligated to pay as **Damages**, in excess of the **Retention** and within the applicable Limit of Insurance, or **Claim Expense** because of **Claims** first made during the **Policy Period** or Extended Reporting Period (if applicable) as a result of **Wrongful Acts** committed in the performance of **Insured Services**.

**SECTION I – INSURING AGREEMENTS, Section B. Defense and Settlement of a Claim** paragraphs **2, 3,** and **4** are deleted in its entirety and replaced with the following:

2. No offer to settle any **Claim** will be made or accepted by the **Insured** without prior written agreement by the **Company**. Notwithstanding the foregoing, it is understood that the **Insured** may settle any **Claim** for which the total cost of **Damages** associated therewith is less than the amount of the remaining **Retention**.

   **2.** If the **Company** is willing to accept the judgment of the trial or appellate court or any negotiated settlement or settlement offer and the **Insured** is not willing to accept such judgment or settlement, the **Company's** liability for any **Damages** incurred after the **Company** indicated its willingness to accept such judgment or settlement shall be limited to the amount for which the **Company** could have resolved the **Claim**.

   **3.** **The Company's** right and duty to defend and pay on the **Insured's** behalf ends when the **Company** has used up the applicable **Limit of Insurance** in payment of **Damages,** or has met its payment obligations in connection with a **Claim** subject to **Section I.B.3.**

**SECTION II – LIMITS OF INSURANCE, RETENTION AND REIMBURSEMENT, Section A. Limit of Insurance**, **paragraphs 1. Each Wrongful Act, and 2. Total Limit of Insurance**, of the policy is deleted in its entirety and replaced by the following:

**A. Limits of Insurance**

**1.** Each **Wrongful Act**

The Each **Wrongful Act** Limit of Insurance stated in Item 5.a. on the Declarations Page is the most the **Company** will pay for **Damages** for the total of all **Claims** made during the **Policy Period** and any Extended Reporting Period arising from one **Wrongful Act**, no matter how many:

**a.** **Insureds** this policy covers;

**b.** **Claims** are made; or

**c.** Persons or organizations make **Claims**.

**2.** Total Limit of Insurance

The Total Limit of Insurance stated in Item 5.b. on the Declarations Page is the most the **Company** will pay for **Damages** for the

total of all **Claims** made during the **Policy Period** and any Extended Reporting Period, no matter how many:

**a.** **Insureds** this policy covers;

**b.** **Claims** are made;

**c.** Persons or organizations make **Claims**; or

**d.** **Wrongful Acts** are committed.

**SECTION II – LIMITS OF INSURANCE, RETENTION AND REIMBURSEMENT, Section B. Retention** of the policy is deleted in its entirety and replaced by the following:

**B. Retention**

The **Company** shall be liable for only that part of **Damages** covered under this policy which is excess of the **Wrongful Act Retention** as described below and in the amount set forth in Item 6. of the Declarations. Such **Retention** shall be borne by the **Insureds** uninsured and at their own risk.

With respect to **Claims** for **Wrongful Acts**, the **Retention** set forth in Item 6. of the Declarations shall apply to each **Wrongful Act** covered by this policy. All **Wrongful Acts** that involve the same or related subject, person, class of person or have common facts or circumstances or involve common transactions, events or decisions, regardless of the number of repetitions, alterations, actions, or forms of communication will be treated as one **Wrongful Act** for the purposes of applying the **Retention**. The **Retention** applies to **Damages**. The **Retention** shall not apply to **Claim Expense** incurred in connection with **Disciplinary Proceedings**.

If more than one **Retention** applies to a **Claim** covered under this policy, the **Insured's Retention** obligation shall not exceed the largest applicable **Retention** in connection with such **Claim**.

The Limit of Insurance shall not be reduced by the application of the **Retention**. All other rights, duties and obligations under the policy shall remain the same regardless of whether or not the **Retention** has been satisfied, including, but not limited to, the **Company's** right and duty to investigate, defend and settle **Claims** and the **Insured's** notice and cooperation duties set forth in this policy.

**SECTION II – LIMITS OF INSURANCE, RETENTION AND REIMBURSEMENT, Section C. Reimbursement**, first paragraph in the section of the policy is deleted in its entirety and replaced by the following:

If, at the **Company's** option, the **Company** has paid any amounts for **Damages** in excess of the applicable Limit of Insurance, including any amounts paid in excess of the **Company**'s obligation to pay **Damages** pursuant to **SECTION I – INSURING AGREEMENT, Section B. Defense and Settlement of a claim, Paragraph 3**. of this policy, or if the **Company** has paid part or all of any **Retention**, the **Insured** shall reimburse the **Company** for such amounts upon demand.

**All other terms and conditions of this policy remain unchanged.**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LAWYERS SPECIFIC AREAS OF PRACTICE CHANGE ENDORSEMENT

This endorsement modifies insurance provided under the following:

Miscellaneous Professional Liability Insurance Policy

**SECTION III – EXCLUSIONS, Section A, Paragraph 20** is deleted

**SECTION III – EXCLUSIONS, Section A, Paragraph 10. Item b.** is deleted

**SECTION III – EXCLUSIONS, Section A** of the policy is amended to add the following:

A. The **Company** is not obligated to pay **Damages** or **Claim Expense** or defend **Claims** for or arising directly or indirectly out of:

Any act or omission by any **Insured** in an action brought by or on behalf of any other **Insured**;

The performance of or failure to perform **Insured Services**:

1. for a corporation , partnership, limited liability company, limited partnership, or other entity;

i. of which any **Insured** or any spouse or domestic partner of an **Insured** is a partner, director, officer, member, board member, trustee, or equivalent position; or

ii. in which any **Insured** or any spouse or domestic partner of an **insured** has an ownership interest of more than 49%; or

2. for an estate or trust of which any **Insured** or any spouse or domestic partner of an **Insured** is a beneficiary or distributee.

The **Insured**'s capacity or status as a public official, or an employee of a governmental body, subdivision, or agency unless the **Insured** is privately retained solely to render **Insured Services** to the governmental body, subdivision or agency and the remuneration for the **Insured Services** is paid directly or indirectly to the **Named Insured**;
Performance of or failure to perform services as an executor, administrator, or representative of an estate, or as a trustee of a trust.

Performance of or failure to perform services regarding divorces of marriages

Performance of or failure to perform services regarding real estate transactions

Performance of or failure to perform services regarding titles to real estate property or land.

Performance of or failure to perform services regarding zoning laws which regard the permitted use of specific land

Performance of or failure to perform services regarding patents, trademarks, copyrights, or trade secrets

Performance of or failure to perform services regarding the issuance, sale, purchase, trade, or transactions of **securities**.

**SECTION V – DEFINITIONS, Section L.** definition **"Individual Insured"** is amended to add the following:

Any lawyer or professional corporation who is a former partner, officer, director, stockholder or shareholder or employee of the

**Named Insured** or **Predecessor Firm**, but only in rendering or failing to render **Legal Services** on behalf of the **Named Insured** or **Predecessor Firm**

**SECTION V – DEFINITIONS,** is amended to add the following:

**W. "Predecessor Firm"** means any entity engaged in **Insured Services** to whose financial assets and liabilities the **Named Insured** is the majority successor in interest.

**X. "Securities"** means a financial asset such as equity, debt, or a derivative. **"Securities"** includes but is not limited to banknotes, bonds, debentures, common stocks, preferred stocks, forwards, futures, options, and swaps.

**All other terms and conditions of this policy remain unchanged.**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NEW YORK CHANGES

This endorsement modifies insurance provided under the following:

Miscellaneous Professional Liability Insurance Policy

**SECTION III – Exclusions – A.2** is deleted in its entirety and replaced by the following:

An act or omission that is dishonest, fraudulent, criminal, malicious or was intentionally committed while knowing it was wrongful. This exclusion does not apply to any **Individual Insured** that did not commit, acquiesce or participate in the actions that gave rise to the **Claim**.

**SECTION III - Exclusions - A.5.** is deleted in its entirety and replaced by the following:

**5**. Harassment, misconduct or discrimination because of or relating to:

a. Race, creed, color or age;

b. Sex, sexual preference, national origin or religion; or

c. Handicap, disability or marital status,

but only if the harassment, misconduct or discrimination was **Knowingly Committed**.

**SECTION III - Exclusions - A.6.** is deleted in its entirety and replaced by the following:

**6.** Gain, profit or advantage to which any **Insured** is not legally entitled.

**SECTION IV – WHERE AND WHEN THE COMPANY INSURES, Section B.4.b.** of the policy are deleted in their entirety and replaced by the following**:**

**B. When the Company Insures**

**4.** Extended Reporting Period

**b.** The following provisions and conditions also apply to the Extended Reporting Period:

**(1)** If there is a **Termination of Coverage** and upon request by the **Named Insured,** the **Company** will sell one of the Extended Reporting Period options listed on the Extended Reporting Period Option Endorsement.

**(2)** The **Company** must receive the **First Named Insured**’s request for the **Extended Reporting Period** in writing within the later of:

**(a)** sixty (60) days after the end of the **Policy Period**, or

**(b)** thirty (30) days from the date of mailing or delivery of the advice informing the **Insured** of an Extended Reporting Period option. This advice does not apply upon cancellation due to non-payment of premium or fraud on the part of the **Insured**.

On receipt and acceptance of the request, the **Company** will issue an endorsement showing the Extended Reporting Period in accordance with the option requested by the **First Named Insured**. At the same time, the **Company** will bill the additional premium, and the **Company** must receive payment within thirty (30) days after the billing date for the endorsement to be effective.

**(3)** The endorsement shall also include the provisions and conditions applicable to the Extended Reporting Period. Once in effect, the Extended Reporting Period may not be canceled.

**(4)** A **Claim** that is first made during the Extended Reporting Period will be deemed to have been made on the last day of the **Policy Period**. The provisions of the policy in effect on the last day of the **Policy Period** will apply.

**(5)** The Extended Reporting Period does not extend the **Policy Period** or change the scope of coverage provided.

**(6)** If a corporation, partnership or other entity has been placed in liquidation or bankruptcy or permanently ceases operations and the entity or its designated trustee does not purchase extended reporting period coverage then any person covered under the policy may request the extended reporting period coverage within 120 days of the termination of coverage

The following is added to **SECTION V - Definitions:**

**W. "Termination of Coverage"** means:

**(1)** cancellation or nonrenewal of a policy; or
**(2)** decrease in limits, reduction of coverage, increased deductible or self-insured retention, new exclusion, or any other change in coverage less favorable to the insured.

**SECTION VI – GENERAL CONDITIONS, Section E. Other Insurance** of the policy is deleted in its entirety and replaced with the following:

**E. Other Insurance**

If other valid and collectible insurance applies to a **Claim** covered under this policy, this insurance will pay the share of the covered **Claim** in the same proportion as the limit of liability under this policy bears to the limit(s) of liability of all insurance covering on the same basis, except when the other insurance is specifically arranged by or on behalf of the **Named Insured** to apply in excess of this insurance, and no other insurance applies to the **Claim**.

**SECTION IV - WHERE AND WHEN THE COMPANY INSURES Section B. When The Company Insures 3.** Reported **Wrongful Acts** is appended as follows:

Notice given by or on behalf of the **Insured**, or written notice by or on behalf of the injured person or any other claimant, to any licensed agent of the **Company** in this state, with particulars sufficient to identify the **Insured**, shall be deemed notice to the **Company**.

Failure to give any notice required to be given by this policy within the time prescribed therein shall not invalidate any claim made by the **Insured**, an injured person or any other claimant if it shall be shown not to have been reasonably possible to give such notice within the prescribed time and that notice was given as soon as was reasonably possible thereafter.

With respect to a claim arising out of death or personal injury of any person, if the **Company** disclaims liability or denies coverage based upon the failure to provide timely notice, then the injured person or other claimant may maintain an action directly against the **Company**, in which the sole question is the **Company's** disclaimer or denial based on the failure to provide timely notice, unless within sixty days following such disclaimer or denial, the **Insured** or the **Company**: (A) initiates an action to declare the rights of the parties under the insurance policy; and (B) names the injured person or other claimant as a party to the action.

**SECTION VI – GENERAL CONDITIONS, Section J. Action Against the Company, Paragraph 1** of the policy is deleted in its entirety and replaced with the following:

**J. Action Against the Company**

**1.** If judgment against an **Insured** is not satisfied within thirty (30) days, an action can be brought against the **Company**. No action will lie against the **Company** unless, as a condition precedent thereto, there has been full compliance with all of the terms of this policy by all **Insureds**, nor until the amount of the Insured's obligation to pay has been fully determined either by judgment or award against the **Insured** by agreement among the **Insured**, the claimant, and the **Company**. Any person or organization, or the legal representative thereof, who has secured such judgment or written agreement, will thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy.

**SECTION VI – GENERAL CONDITIONS** of the policy is amended to add the following:

**O. Renewal With Altered Terms**

If renewal of this policy will be based on any increase in premium, the **Company** will provide the **Named Insured** sixty (60) days advance notice of such increase prior to the expiration of the policy. If renewal of this policy will be based on any change(s) which substantially alter the terms of the policy, the **Company** will provide the **Named Insured** sixty (60) days advance notice of such change(s) prior to the expiration of the policy. The notice will be mailed via certified mail or delivered to the **Named Insured** at the address shown on the Declarations Page of this policy. If notice is mailed, proof of mailing will be sufficient proof of notice. Delivery of the notice will be the same as mailing.

**SECTION IV – WHERE AND WHEN THE COMPANY INSURES Section B. When The Company Insures 1. Claims First Made** is deleted in its entirety and replaced with the following:

**1. Claims First Made**
This insurance applies when a **Claim** is first made against any **Insured** during the P**olicy Period**, any subsequent renewal, and any Extended Reported Period applicable in **SECTION IV, Section B. When The Company Insures Paragraph 4.** To be covered, the **Claim** must also arise from a **Wrongful Act** committed during the **Policy Period**, except as otherwise provided below in **SECTION – IV, Section B. When The Company Insures, Paragraphs 2 and 3**. The **Company** will consider a **Claim** to be first made against an **Insured** when a written **Claim** is first received by any **Insured**.

**SECTION V - DEFINITIONS Q** is deleted in its entirety and replaced with the following:

**Q. "Pollutant"** means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor,soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**SECTION II - LIMITS OF INSURANCE, RETENTION AND REIMBURSEMENT Section C. Reimbursement** is deleted in its entirety and replaced with the following:

If, at the **Company**'s option, the **Company** has paid any amounts for **Damages** in excess of the applicable Limit of Insurance, including any amounts paid in excess of the **Company**'s obligation to pay **Damages** pursuant to **SECTION I – INSURING AGREEMENT**, **Section B. Defense and Investigation, Paragraph 3.** of this policy, or if the **Company** has paid part or all of any **Retention**, the **Insured** shall reimburse the **Company** for such amounts upon demand.

**SECTION II - LIMITS OF INSURANCE, RETENTION AND REIMBURSEMENT 3**. Sub-Limits **d** is deleted in its entirety

**SECTION V - DEFINITIONS H. "Damages"** is deleted in its entirety and replaced with:

**"Damages"** means monetary judgment, award or settlement, including those that are actual, or statutory; and legal expense or other costs included as part of a judgment, award or settlement.

**Damages** also includes interest on any part of any judgment that accrues after entry of the judgment and before the **Company** has paid, offered to pay or deposited in court the part of the judgment that is within the applicable Limit of Insurance; however,payment of such interest shall not reduce the Limit of Insurance.

**Damages** does not include fines, penalties,taxes or return of fees, deposits, commissions or charges for goods or services.

**Damages** also does not include costs of correcting, performing or re-performing **Insured Services** by:

1. Any **Insured**; or

2. Another party, when an Insured had the opportunity to correct, perform or re-perform the service that generated the cost.

**SECTION III - EXCLUSIONS** is amended to add the following:

**2**4.

**a.** The actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of:

**(1)** asbestos, asbestos fibers, any other form of asbestos, or any products or materials containing asbestos, asbestos fibers or any other form of asbestos;

regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to any injury or damage;

**b.** Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of:

**(1)** asbestos, asbestos fibers, any other form of asbestos, or any products or materials containing asbestos, as-bestos fibers or any other form of asbestos;

**c.** Any supervision, instructions, recommendations, warnings, or advice given or which should have been given in connection with a. and b. above;

**d.** Any obligation to share damages with or repay someone else who must pay damages because of:

**(1)** asbestos, asbestos fibers, any other form of asbestos, or any products or materials containing asbestos, asbestos fibers or any other form of asbestos;

**e.** Any injury or damage arising out of the loss of use of, or other unavailability of, any product or material actually, potentially, or allegedly containing asbestos, asbestos fibers, any other form of asbestos;

**b. Bodily Injury** or **Property Damage** resulting from **Hazardous Properties** of **Nuclear Material**, if:

**(1)** The **Nuclear Material (a)** is at any **Nuclear Facility** owned by, or operated by or on behalf of, an **Insured** or (b) has been discharged or dispersed therefrom;

(2) The **Nuclear Material** is contained in **Spent Fuel** or **Waste** at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an **Insured**; or

(3) The **Bodily Injury** or **Property Damage** arises out of the furnishing by an **Insured** of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any **Nuclear Facility**, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to **Property Damage** to such **Nuclear Facility** and any property thereat.

**25.**

a. **Bodily Injury** or **Property Damage**:

**(1)** With respect to which an **Insured** under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

**(2)** Resulting from the **Hazardous Properties** of **Nuclear Material** and with respect to which

**(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or

**(b)** the **Insured** is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization

**c.** As used in **SECTION III - EXCLUSIONS. 25.**:

**"Hazardous properties"** includes radioactive, toxic or explosive properties.

**"Nuclear material"** means **"source material", "Special nuclear material" or "by-product material".**

**"Source material", "special nuclear material",** and **"by-product material"** have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

**"Spent fuel"** means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a **"nuclear reactor".**

**"Waste"** means any waste material (a) containing **"by-product material"** other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its **"source material"** content, and (b) resulting from the operation by any person or organization of any **"nuclear facility"** included under the first two paragraphs of the definition of **"nuclear facility".**

**"Nuclear facility"** means:

(a) Any **"nuclear reactor";**

(b) Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing **"spent fuel"**, or (3) handling, processing or packaging **"waste"**;

(c) Any equipment or device used for the processing, fabricating or alloying of **"special nuclear material"** if at any time the total amount of such material in the custody of the **Insured** at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of **"waste"**;

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

**"Nuclear reactor"** means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

**"Property damage"** includes all forms of radioactive contamination of property.

**SECTION V - DEFINITIONS** paragraph **B. "Application"** item **2.** is deleted in its entirety.

**SECTION V - DEFINITIONS** paragraph **P. "Policy Period**" is deleted in its entirety and replaced with the following:

**P. "Policy Period"** means the period of time stated in Item 2. on the Declarations Page, or any shorter period resulting from a **Termination of Coverage**

**SECTION V - DEFINITIONS** paragraph **D.** is deleted and replaced with the following:

**D. "Claim"** means a demand received by an **Insured** for **Damages** alleging an act or omission in the rendering of or failing to render **Insured Services** for others.

**SECTION V - DEFINITIONS** is appended as follows:

Z. "**Knowingly Committed"** means when any person allegedly or actually participates in, directs, or knowingly allows any act.

**All other terms and conditions of the Policy remain unchanged.**

Case 1:25-cv-09798-DEH-JW Document 1-1 Filed 11/25/25 Page 41 of 42

**Policy Number:** **Renewal of:**

**Carrier: FIELD – A Stock Company**

# NEW YORK DECLARATIONS

***IMPORTANT NOTICE* Claims Made Policy:** this insurance coverage is on a claims made basis. Coverage applies only to those **claims** that are first made during the P**olicy Period** and any extended reporting period, if applicable, as those terms are described in this policy. Coverage does not apply to any **Wrongful Act** Committed before the R**etroactive Date** stated in this policy. Unless an extended reported period option is purchased there is no coverage for claims reported after T**ermination of Coverage**. Extended reported period options last from 1 year to unlimited and unless an unlimited option is purchased coverage gaps may occur. The rates for a claims made policy are lower in earlier years but substantial increases are expected to occur with renewals as more coverage is provided.

**[1]** **Named Insured and Mailing Address**

**Additional Insured Names:**

**[2]** **Policy Period**
From to 12:01 AM standard time at the Mailing Address of the **Named Insured**.

**[3]** **Retroactive Date**

**[4]** **Schedule of Insured Services**

**[5]** **Limits of Insurance** **$** Each **Wrongful Act**
**$** Total Limit of Insurance

**[6]** **Retention** **$** Each **Wrongful Act**

**[7]** **Net Variable Premium $**
**Expense Constant $**
**Net Premium $**
**Minimum Expense Constant $**

**[8] The Extended Reporting Period** options and the respective percentage of the Net Variable Premium, as stated in Item **[7]** above that the **First Named Insured** must pay to purchase the **Extended Reporting Period** are:

One Year = 90%, Two years = 135%, Three years = 180%, Four Years = 203%, Unlimited = 225%

**[9]** **Forms Attached at Issuance**

By acceptance of this policy, the Insured agrees that the statements in the Declarations and the Application and any attachments hereto are the Insured's agreements and representations and that this policy embodies all the agreements existing between the Insured and the Company or any of its representatives relating to this insurance.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AUTOMATIC EXTENDED REPORTING PERIOD ENDORSEMENT

This endorsement modifies insurance provided under the following:

Miscellaneous Professional Liability Insurance Policy

**SECTION IV – WHERE AND WHEN THE COMPANY INSURES, Section B.4** Extended Reporting Period of the policy is amended to add the following:

Automatic Extended Reporting Period: If there is a **Termination of Coverage**, the **First Named Insured** shall be entitled to an Automatic Extended Reporting Period of sixty (60) days from the effective date of the cancellation or nonrenewal. **Claims** first made during this period shall be eligible for coverage under the policy provided that the conditions of **Section IV.B.4.a.(1) - (3**) of the policy are met. A **Claim** that is first made during the Automatic Extended Reporting Period will be deemed to have been made on the last day of the **Policy Period**. The provisions of this policy in effect on the last day of this **Policy Period** will apply. The Automatic Extended Reporting Period shall not reinstate or increase the Limit of Insurance.

**All other terms and conditions of this policy remain unchanged.**