UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE FRANCIS FIRM PLLC,<br>Plaintiff,<br>v.<br>BERKSHIRE HATHAWAY DIRECT INSURANCE COMPANY d/b/a biBERK,<br>Defendant. | 25 Civ. 9798 (DEH)<br>**OPINION AND ORDER** |

DALE E. HO, United States District Judge:

Plaintiff The Francis Firm, PLLC ("TFF") is a law firm and holder of a professional liability insurance policy (the "Policy") issued by Defendant Berkshire Hathaway Direct Insurance Company d/b/a biBERK ("BHDIC"). On February 12, 2024, TFF was sued in a bankruptcy proceeding (the "Bankruptcy Action") and filed a claim under the Policy, seeking coverage and BHDIC's representation in that action. BHDIC denied the claim as outside the scope of the Policy. TFF now brings this Action alleging breach of contract and seeking a declaration of breach by BHDIC for declining to provide representation for TFF in the Bankruptcy Action.

BHDIC moves to dismiss, arguing that it properly denied Plaintiff's attempted claims. For the reasons stated below, the motion is **GRANTED**.

## BACKGROUND[1]

### I. The Policy

BHDIC issued TFF a professional liability insurance policy numbered N9PL969763 (the "Policy") for the policy period of May 6, 2023 through May 6, 2024. Policy at 4, ECF No. 1-1.

[1] The following facts are taken from the Complaint and are assumed to be true solely for purposes of adjudicating BHDIC's motion. *See Buon v. Spindler*, 65 F.4th 64, 69 n.1 (2d Cir. 2023).

The Policy states that BHDIC has a duty to "defend a covered [c]laim, even if the allegations are groundless, false or fraudulent." Policy at 8. In other words, if a claim meets the criteria for coverage under the Policy, BHDIC has a contractual obligation to defend it unless exclusions apply. *Id.*

The Policy provides coverage for claims against the Insured that could result in liability for damages or claim expenses, provided that the claims arise from wrongful acts committed during the performance of insured services during the policy period. *See id.* Section V of the Policy defines "wrongful act," in relevant part, as a "negligent act, error or omission." *See id.* It also defines "damages," as modified by the relevant New York state endorsement, as a "monetary judgment, award or settlement, including those that are actual, or statutory; and legal expense or other costs included as part of a judgment, award or settlement." *Id.* at 16, 38. But the Policy exempts from this definition "fines, penalties, taxes or return of fees, deposits, commissions or charges for goods or services" as well as the costs of correcting or re-performing insured services. *Id.* Section III of the Policy, which outlines exclusions from coverage, further exempts from coverage all claims arising out of "[g]ain, profit or advantage to which any Insured is not legally entitled." *Id.* at 11, 35.

## II. The Bankruptcy Action

On February 15, 2022, Ho Wan Kwok (the "Debtor") filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Connecticut. *In re Ho Wan Kwok*, Case No. 22-50073, ECF No. 1 (Bankr. D. Conn.).

The bankruptcy court subsequently appointed Luc A. Despins as the Chapter 11 trustee (the "Trustee") for the Debtor's estate. First Am. Compl. ("Bankruptcy FAC") ¶ 14, ECF No. 44, *Luc A. Despins, Ch. 11 Trustee v. The Francis Firm PLLC*, Case No. 24-05168 (Bankr. D. Conn.) (hereinafter "*Despins*"). According to the Trustee, the Debtor orchestrated a fraudulent scheme in

which he used a network of alter-ego shell companies to conceal assets from and defraud his creditors. Bankruptcy FAC ¶ 15. The Trustee then initiated adversary proceedings against numerous other law firms alleged to have received transfers in connection with the scheme. Compl. ¶ 18, ECF No. 1. TFF was named as an adversary in one such proceeding filed in the District of Connecticut on February 12, 2024. *See generally Despins*, Case No. 24-05168. The First Amended Complaint in the Bankruptcy Action seeks "avoidance and recovery of fraudulent transfers, post-petition transfers, and related relief pursuant to Bankruptcy Code Sections 544, 548, 549, and 550 and New York Debtor & Creditor Law Sections 273, 274, and 276." Bankruptcy FAC at 1 (cleaned up).

In the Bankruptcy Complaint, the Trustee alleges that TFF was retained as counsel for one of the alter-ego companies, Golden Spring (New York) Limited, which functioned as part of the Debtor's shell game. Bankruptcy FAC ¶ 39. The Bankruptcy Complaint further alleges that the Debtor transferred funds to TFF in the amount of $152,500.00 prior to the Petition Date, and an additional $288,500.00 after the Petition Date (the "Transfers"). *Id.* ¶¶ 2, 4. However, as TFF concedes, the Bankruptcy Complaint does not allege that TFF had knowledge of the alleged shell game—merely that the Debtor acted with fraudulent intent and did not receive "reasonably equivalent value" in consideration for the transfers. Compl. ¶¶ 24-25.

After TFF was sued in the Bankruptcy Action, it submitted a claim to BHDIC seeking representation. Compl. ¶ 28. BHDIC denied the claim and later denied TFF's repeated attempts to appeal the denial. Compl. ¶¶ 30, 46, 53, 61. TFF now seeks relief for what it views as BHDIC's willful and unlawful breach of the Policy by bringing this suit in federal court.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Sacerdote v. New York*

*Univ.*, 9 F.4th 95, 106 (2d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).[2] "In assessing the complaint, [a court] must construe it liberally, accepting all factual allegations therein as true and drawing all reasonable inferences in the plaintiffs' favor." *Id.* at 106-07. However, the court must disregard any "conclusory allegations, such as 'formulaic recitations of the elements of a cause of action.'" *Id.* at 107 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

**DISCUSSION**

BHDIC argues that the Bankruptcy Action fails to qualify for coverage under the Policy. On review, the Court agrees for at least three independent reasons, discussed herein. First, the Bankruptcy Complaint stops short of alleging circumstances amounting to a "wrongful act." *See* Def.'s Mem. L. Supp. Mot. to Dismiss ("Def.'s Mem.") at 17-20, ECF No. 12-2. Second, the Bankruptcy Action does not seek "damages" as defined by the Policy. *See id.* at 13-17. And third, even if the Policy's coverage requirements were met, the "Gain, Profit or Advantage" exclusion independently bars coverage. *See id.* at 20-21. Thus, despite an insurers' "extremely broad" duty to defend under New York law, the Court concludes that BHDIC had no duty to defend TFF in that action. Furthermore, because the Court concludes that the Complaint fails to state a claim for breach of contract, it also concludes that the Complaint fails to state a claim for breach of the implied covenant of good faith and fair dealing. Accordingly, the Motion to Dismiss is **GRANTED** in full.

[2] All references to Rules are to the Federal Rules of Civil Procedure. In all quotations from cases, the Court omits citations, alterations, emphases, internal quotation marks, and ellipses, unless otherwise indicated.

## I. The Duty to Defend under an Insurance Policy

All claims in the present action relate to the Policy's coverage and BHDIC's subsequent duty to defend under the Policy. "An insurance agreement is subject to principles of contract interpretation." *Burlington Ins. Co. v. NYC Transit Auth.*, 79 N.E.3d 477, 481 (N.Y. 2017). As with any contract, "unambiguous provisions of an insurance contract must be given their plain and ordinary meaning," the interpretation of which is a question of law for the court. *White v. Cont'l Cas. Co.*, 878 N.E.2d 1019, 1021 (N.Y. 2007). However, courts may not interpret an insurance contract in a way that adds, excises, or distorts the meaning of phrases thereby creating a new contract under the guise of interpretation. *ACE Sec. Corp. v. DB Structured Prods., Inc.*, 36 N.E.3d 623, 630 (N.Y. 2015).

Under New York law, an insurer's duty to defend is "exceedingly broad." *Euchner-USA, Inc. v. Hartford Cas. Ins. Co.*, 754 F.3d 136, 140 (2d Cir. 2014). An insurer will be called upon to provide a defense if the allegations of the underlying complaint suggest a "reasonable possibility" of coverage. *Id.* at 141. Under a liberal reading, if the claim against the insured is within the embrace of the policy, the insurer must come forward to defend the insured against even groundless and false claims. *See id.* Any ambiguity as to whether the underlying complaint states a claim that falls within the Policy's coverage must be resolved in favor of the insured. *See Brooklyn Ctr. for Psychotherapy, Inc. v. Philadelphia Indem. Ins. Co.*, 955 F.3d 305, 310 (2d Cir. 2020). Stated differently, an insurer is only relieved of its duty to defend if a court finds that, as a matter of law, there is no possible legal or factual basis for finding that the defendant is obligated to indemnify the plaintiff. *See id.*

"However, unsubstantiated speculation and conjecture are not sufficient to trigger a duty to defend." *Scottsdale Ins. Co. v. McGrath*, No. 19 Civ. 7477, 2025 WL 2509190, at *12 (S.D.N.Y. Sept. 2, 2025). Courts will not "hypothesize" or "imagine episodes or events" that are beyond the

scope of the circumstances alleged in the underlying complaint. *See Stamford Wallpaper Co. v. TIG Ins.*, 138 F.3d 75, 81 (2d Cir. 1998).

New York courts look to two sources of information to determine whether there is a possible factual or legal basis for an obligation to defend. *See Scottsdale*, 2025 WL 2509190, at *13. First, courts will look within the "four corners" of the underlying complaint to determine whether the allegations potentially give rise to a covered claim. *See Worth Const. Co. v. Admiral Ins. Co.*, 888 N.E.2d 1043, 1045 (N.Y. 2008). In so doing, courts must construe any ambiguities liberally and resolve them in the insured's favor. *See Euchner-USA*, 754 F.3d at 141. Second, even where the underlying complaint stops short of revealing the possibility of coverage, a duty to defend may still exist if the insurer possesses actual knowledge of extrinsic facts establishing a reasonable possibility of coverage. *See Fitzpatrick v. Am. Honda Motor Co.*, 575 N.E.2d 90, 91-92 (N.Y. 1991). When analyzing either source of information, any coverage exclusions in a policy must not "be extended by interpretation or implication," but rather should be "accorded a strict and narrow construction." *Pioneer Tower Owners Ass'n v. State Farm Fire & Cas. Co.*, 908 N.E.2d 875, 877 (N.Y. 2009).

## II. Wrongful Act

The Court first concludes that BHDIC had no duty to defend TFF in the Bankruptcy Action because the Bankruptcy Complaint did not allege that TFF committed a wrongful act. For a claim to be covered under the Policy, it must arise from a wrongful act committed by the Insured in the performance of insured services. *See* Policy at 8. The Policy defines "wrongful act," in relevant part, as "[a] negligent act, error or omission." *Id.*

As explained, New York law directs courts to two sources in determining whether a duty to defend exists: first, the allegations within the four corners of the underlying complaint, and second, any extrinsic facts known to the Insurer that establish a reasonable possibility of coverage.

*See Scottsdale*, 2025 WL 2509190, at *13; *Fitzpatrick*, 575 N.E.2d at 92. The Court takes each of these sources in turn.

**A. Allegations Within the Bankruptcy Complaint**

In this action, the Bankruptcy Complaint asserts five claims against TFF:

i. Claim to Avoid and Recover Actual Fraudulent Transfers Pursuant to Bankruptcy Code sections 548(a)(1)(A) and 550(a);

ii. Claim to Avoid and Recover Actual Fraudulent Transfers pursuant to N.Y. Debt. & Cred. Law sections 273 and 276, and Bankruptcy Code sections 544(b) and 550(a);

iii. Claim to Avoid and Recover Constructive Fraudulent Transfers Pursuant to Bankruptcy Code sections 548(a)(1)(B) and 550(a);

iv. Claim to Avoid and Recover Constructive Fraudulent Transfers Pursuant to N.Y. Debt. & Cred. Law sections 273(a)(2), 274 and 276 and Bankruptcy Code sections 544(b) and 550(a); and

v. Claim to Avoid and Recover Unauthorized Postpetition Transfers pursuant to Bankruptcy Code sections 549 and 550(a).

Bankruptcy FAC ¶¶ 46-72.

Each claim in the Bankruptcy Complaint describes the conduct of the Debtor; namely, his use of alter-ego shell companies to commit either actual or constructive fraud by transferring assets to TFF as part of his scheme to hinder, delay, and defraud creditors. *See id.* The Bankruptcy Complaint does not specifically allege any wrongdoing, let alone a negligent act, error, or omission, on the part of TFF. *See generally id.* Indeed, the only references to TFF's conduct in the Bankruptcy Complaint are the allegations that it agreed to serve as counsel to one of the Debtor's alleged alter-ego shell companies, that it received the Transfers as payment for its services, and that the Debtor "received less than a reasonably equivalent value" in exchange for the transfers. *See* Bankruptcy FAC ¶¶ 39, 42-45, 55, 61; Def.'s Mem. at 17-18.

TFF contends that the allegation that the Debtor received less than equivalent value "necessarily place[s] the adequacy of [TFF]'s legal services at issue," thereby opening the door for the Trustee to pursue a theory of negligence in the Bankruptcy Action. *See* Mem. L. Opp'n ("Pl.'s Opp'n") at 11, ECF No. 15. But when covered conduct is not pleaded in the underlying complaint, courts may only find a duty to defend if the possibility of future coverage is "reasonable." *See Spandex House, Inc. v. Hartford Fire Ins. Co.*, 407 F. Supp. 3d 242, 256 (S.D.N.Y. 2019) ("The duty to defend cannot be imposed based purely on speculation as to what a third party may conceivably someday claim."), *aff'd*, 816 F. App'x 611 (2d Cir. 2020) (summary order). Courts may not "hypothesize or imagine episodes or events that cannot be found among the allegations, and cannot reasonably be deduced from them." *Stamford Wallpaper Co.*, 138 F.3d at 81; *see also Brooklyn L. Sch. v. Aetna Cas. & Sur. Co.*, 849 F.2d 788, 790 (2d Cir. 1988) (reasoning that courts should not "imagine[] what is not in the complaint in order to find liability which was not intended").

Here, negligence cannot be reasonably deduced from the value allegation because nothing in the Bankruptcy Complaint connects that allegation to the quality of TFF's professional services. With respect to TFF, the Trustee merely alleges that the Debtor "intentionally used [TFF's] services to effectuate his financial shell game," and that the Transfers "represented payment for such services." Bankruptcy FAC ¶¶ 40-41. The constructive fraud claims then recite, without further elaboration, that the Debtor received less than a "reasonably equivalent value in exchange for the Prepetition Transfers." *Id.* ¶¶ 55, 61. Alleging that a party "received less than a reasonably equivalent value" in exchange for compensation is merely a standard element of a constructive fraud claim. *See* 11 U.S.C.S. § 548(a)(1)(B)(i) (stating that a trustee may avoid a transfer if the debtor "received less than a reasonably equivalent value in exchange for such transfer or obligation"). Nowhere does the Bankruptcy Complaint allege that TFF's services were

inadequate, deficient, or negligently performed. Reading the value allegation as an attack on the quality of TFF's work would require this Court to hypothesize a theory of liability that the Trustee has not pleaded and that his own allegations do not suggest. TFF's contention that the Trustee might, at a later stage, attempt to prove a lack of reasonably equivalent value through evidence of negligence is precisely the sort of "unsubstantiated speculation and conjecture" that is insufficient to trigger a duty to defend. *See Scottsdale*, 2025 WL 2509190, at *12; *Spandex House, Inc.*, 407 F. Supp. 3d at 256.

**B. Knowledge of Extrinsic Facts**

TFF separately argues that the absence of a specific allegation of negligence against it in the Bankruptcy Complaint does not preclude the possibility that the claim is covered because, even where the complaint itself does not reveal the possibility of coverage, an insurer must provide a defense when it has "actual knowledge of facts establishing a reasonable possibility of coverage." *Charter Oak Fire Ins. Co. v. Zurich Am. Ins. Co.*, 462 F. Supp. 3d 317, 324 (S.D.N.Y. 2020) (quoting *Fitzpatrick*, 575 N.E.2d at 93). However, TFF provides no such facts and instead relies largely on a misreading of *Westport Ins. Corp. v. Napoli, Kaiser & Bern*. *See* Pl.'s Opp'n at 11-12.

In *Westport*, an insurer brought a declaratory-judgment action alleging that it had no duty to defend an insured law firm. *See Westport Ins. Corp. v. Napoli, Kaiser & Bern*, 746 F. Supp. 2d 502, 507-08 (S.D.N.Y. 2010). The court granted summary judgment for the insured, holding that the insurer had a duty to defend even though the underlying complaint failed to allege a covered claim. *Id.* However, that determination turned on the insurer's knowledge of extrinsic facts establishing a reasonable possibility of coverage that the underlying complaint had not pleaded. *See id.* at 507-08. Specifically, the insurer had "knowledge of the factual circumstances surrounding the underlying alleged misconduct" from previous coverage litigation involving the

same policy, in which another court had already held that negligence claims arising from the same conduct would be covered. *See id.* The *Westport* court then determined that the insurer knew the claim at issue involved covered conduct given its knowledge of the previous coverage litigation, and therefore had a duty to defend. *See id.* at 508.

Here, by contrast, TFF identifies no comparable knowledge held by BHDIC of negligent conduct by TFF. While *Westport* held that, in determining whether a claim is covered by a policy, the "labels placed on allegations [in a complaint] are not controlling," *id.* at 508, it did not hold that courts may hypothesize a basis for coverage that is unpled or which the insurer had no knowledge of, as TFF now asks this Court to do. TFF has failed to demonstrate that BHDIC's duty to defend was based on knowledge of extrinsic facts, rendering *Westport* inapt.

* * *

As discussed above, the Policy unambiguously requires a negligent act, error, or omission on the part of TFF to trigger BHDIC's duty to defend. The Bankruptcy Complaint does not give rise to a reasonable inference that such conduct took place, nor does TFF allege BHDIC's knowledge of extrinsic facts giving rise to a possible inference of covered conduct. Accordingly, BHDIC had no duty to defend TFF in the Bankruptcy Action.

## III. Damages

As an additional ground for dismissal, the Court concludes that BHDIC also had no duty to defend the bankruptcy demand because there is no possibility that it would have resulted in covered damages. The Policy defines "damages," in pertinent part, as:

> "Damages" means monetary judgment, award or settlement, including those that are actual, or statutory; and legal expense or other costs included as part of a judgment, award or settlement.
>
> Damages also includes interest on any part of any judgment that accrues after entry of the judgment and before the Company has paid, offered to pay or deposited in

> court the part of the judgment that is within the applicable Limit of Insurance; however, payment of such interest shall not reduce the Limit of Insurance.
>
> Damages does not include fines, penalties, taxes or ***return of fees, deposits, commissions or charges for goods or services.***"

Policy at 16-17, 38 (emphasis added).

### A. Restitution

As an initial matter, the Court concludes that return of the Transfers is restitutive in nature and is thus uninsurable. The Bankruptcy Action seeks to recover the fraudulent transfers paid by the Debtor to TFF, or the value thereof, pursuant to Sections 544, 548, 549, and 550 of the Bankruptcy Code. Bankruptcy FAC at 1. But New York law and public policy proscribe insuring against the risk of being ordered to return funds that have been wrongfully acquired. *See Scottsdale*, 2025 WL 2509190, at 19; *Hatfield v. 96-100 Prince St., Inc.*, No. 94 Civ. 3917, 1997 WL 151502, at *2 (S.D.N.Y. Apr. 1, 1997); *see also XL Specialty Ins. Co. v. Loral Space & Commc'n, Inc.*, 918 N.Y.S.2d 57, 62 (1st Dep't 2011) ("[T]here is no insurance where an insured is forced to disgorge funds that it acquired wrongfully.").

The principles governing fraudulent conveyance are rooted in the law of equity, Restatement (Third) of Restitution and Unjust Enrichment § 1 (2011), and the associated remedy for such transfers is simply restitution, or the "recovery of the avoided transfers." *Scottsdale*, 2025 WL 2509190, at *20 (quoting 11 U.S.C. § 550). Thus, given that the return of funds due to a fraudulent transfer is in the nature of restitution, TFF's potential liability for this form of relief is not insurable. *See Admiral Ins. Co. v. Weitz & Luxenberg, P.C.*, No. 2 Civ. 2195, 2002 WL 31409450, at *5 (S.D.N.Y. Oct. 24, 2002); *Vigilant Ins. Co. v. Credit Suisse First Bos. Corp.*, 782 N.Y.S.2d 19, 20 (1st Dep't 2004) ("The risk of being directed to return improperly acquired funds is not insurable. Restitution of ill-gotten funds does not constitute 'damages' or a 'loss' as those terms are used in insurance policies."); *U.S. Fid. & Guar. Co. v. Fendi Adele S.R.L.*, 823 F.3d 146,

152 (2d Cir. 2016) (reasoning that an insured could "not have reasonably expected that it would be indemnified for disgorgement damages based on the profits it improperly made"). Accordingly, the word "damages" does not—because it cannot—include a claim for restitution of money that was wrongfully obtained by an insured under New York law.

### B. Interest and Fees

TFF also argues that the Bankruptcy Complaint's prayer for relief in the form of pre- and post-judgment interest separately meets the definition of Damages under the Policy, thus rendering the claims insurable. Pl.'s Opp'n at 8. However, where prejudgment interest is ancillary to an otherwise uninsurable award, it is not separately insurable, because coverage for defense costs is "only recoverable for covered claims." *See Millennium Partners, L.P. v. Select Ins. Co.*, 882 N.Y.S.2d 849, 853 (N.Y. Sup. Ct.), *aff'd*, 889 N.Y.S.2d 575 (N.Y. App. Div. 2009); *Shnarch v. Empire Mut. Ins. Co.*, 535 N.Y.S.2d 180, 181-82 (N.Y. App. Div. 1988) ("[I]nsurance carriers are liable for interest only on that portion of the judgment which is covered by the insurance policy, unless the contract of insurance contains a broader provision."); *Vigilant Ins. Co.*, 782 N.Y.S.2d at 20 (holding that insurer is not obligated to pay defense costs where settlement amount is not covered under the policy).

Seeking relief in the form of interest or legal fees serves the same restitutive end as returning the transferred assets: compensating the Trustee's estate for the loss of assets. *See id.* A demand for ancillary relief like interest does not convert an otherwise uninsurable claim into a covered one. *See Millennium Partners*, 882 N.Y.S.2d at 853; *see also Athridge v. Aetna Cas. & Sur. Co.*, 604 F.3d 625, 631 (D.C. Cir. 2010) (rejecting the notion that a "supplementary payment provision [can] manufacture primary liability where none otherwise exists"). Because the primary remedy sought in the Bankruptcy Action is uninsurable, and ancillary amounts sought are not independently insurable, this action cannot result in an award of damages covered by the Policy.

*See Scottsdale*, 2025 WL 2509190, at *19; *Millennium Partners*, 882 N.Y.S.2d at 853. Thus, the damages clause similarly excludes the Bankruptcy Action from coverage under the policy.

## IV. The "Gain, Profit, or Advantage" Exclusion

Finally, even if the Bankruptcy Complaint alleged a wrongful act and sought covered damages, the Policy's "Gain, Profit, or Advantage" exclusion would independently bar coverage. The text of this exclusion, as modified by the relevant New York state endorsement, states that BHDIC "is not obligated to pay Damages or Claim Expense or defend Claims for or arising directly or indirectly out of . . . [g]ain, profit or advantage to which any Insured is not legally entitled." Policy at 11, 35.

As explained above, each of the claims in the Bankruptcy Complaint seek recovery for alleged fraudulent transfers from the Debtor to TFF. The Bankruptcy Complaint alleges that the Debtor conveyed the Pre-Petition Transfers with the intent to defraud his creditors, and that any Post-Petition Transfers dissipated property of the Chapter 11 estate without authorization from the Bankruptcy Court. Bankruptcy FAC ¶¶ 34, 47, 55, 69-70. Accordingly, the Trustee alleges that the funds TFF received were never the Debtor's to freely give because he was legally prohibited from making the Transfers at all relevant times.

Courts have repeatedly approved of the denial of coverage for actions seeking the return of similarly ill-gotten funds. For example, in *Steadfast Ins. Co. v. Stroock & Stroock & Lavan LLP*, another judge of this District concluded that an analogous policy exclusion applied to a claim brought against a law firm alleging that the firm was not legally entitled to funds it received as compensation for legal services when the assets did not belong to the sender to begin with. *See Steadfast Ins. Co. v. Stroock & Stroock & Lavan LLP*, 277 F. Supp. 2d 245, 253 (S.D.N.Y. 2003), *aff'd*, 108 F. App'x 663 (2d Cir. 2004). *Stroock* reasoned that "[b]ecause the Creditors Complaint

clearly alleged that Stroock received an unlawful advantage as a result of the fraudulent transfers, the claims fall wholly within the unlawful profit, gain or advantage exclusion." *Id.* at 253.

Here, the Bankruptcy Complaint alleges that TFF received Transfers to which it was not legally entitled, placing each claim within the Policy's "Gain, Profit, or Advantage" exclusion. *See* Bankruptcy FAC ¶¶ 40-41, 44-45. TFF does not contend that it was in fact entitled to the funds, but rather that entitlement is a fact-intensive question that cannot be resolved on the pleadings alone. *See* Pl.'s Opp'n at 13-14. However, this argument conflates the merits of the Trustee's claims with the coverage inquiry, which is narrowly confined to the allegations in the Bankruptcy Complaint. *See Charter Oak*, 462 F. Supp. 3d at 323-24 (explaining that the duty to defend is determined by the allegations of the underlying complaint, liberally construed, not by whether those allegations will ultimately be proven). Whether BHDIC has a duty to defend TFF rests on the applicability of the Policy's coverage provisions to the claims pleaded in the Bankruptcy Complaint. Each claim pleaded therein alleges an unlawful gain. Thus, the "Gain, Profit, or Advantage" exclusion independently establishes that BHDIC has no duty to defend the Bankruptcy Action.[3]

## CONCLUSION

For the foregoing reasons, the Court concludes that BHDIC had no duty to defend TFF in the Bankruptcy Action. BHDIC's motion to dismiss is hereby **GRANTED**. Because "[d]ismissals for failure to state a claim . . . are generally with prejudice," *Miller v. Brightstar Asia, Ltd.*, 43

---

[3] Because TFF's remaining claim for breach of the implied covenant of good faith and fair dealing depends on the existence of coverage, these claims fail as well. *See Harris v. Provident Life & Acc. Ins. Co.*, 310 F.3d 73, 80 (2d Cir. 2002) (noting that a claim of bad faith requires the existence of underlying contractual liability); *Horowitz v. Am. Int'l Grp., Inc.*, No. 09 Civ. 7312, 2010 WL 3825737, at *9 (S.D.N.Y. Sept. 30, 2010), *aff'd*, 498 F. App'x 51 (2d Cir. 2012) (summary order) ("A good faith and fair dealing claim is not an insurance policy to cover instances where there is no breach of contract.").

F.4th 112, 126 (2d Cir. 2022), and because the Court concludes that any amendment would be futile, this case is **DISMISSED WITH PREJUDICE**.

The Clerk of Court is respectfully requested to terminate ECF No. 12 and to close this case.

SO ORDERED.

Dated: August 6, 2026

New York, New York

DALE E. HO
United States District Judge